### UNITED STATES v. YEUNG CHU KENG.

(District Court, D. Montana. September 2, 1905.)

No. 1,054.

ALIENS—PROCEEDING FOR DEPORTATION OF CHINESE PERSON—EFFECT OF DISCHARGE BY COMMISSIONER.

A United States commissioner exercises special authority in Chinese cases, and where a Chinese person charged with being unlawfully in the United States has had a hearing regular in form before a commissioner, who has adjudged that such person is entitled to be and remain within the United States and has ordered his discharge, the decision is determinative of the issue, and such person cannot be again apprehended and proceeded against upon a complaint filed in the District Court of the same district upon substantially the same facts.

[Ed. Note.—Citizenship of the Chinese, see notes to Gee Fook Sing v. United States, 1 C. C. A. 212; Lee Sing Far v. United States, 35 C. C. A. 332.]

Proceeding for Deportation of Chinese Person.

Carl Rasch, U. S. Atty., and J. Miller Smith, Asst. U. S. Atty. Sanders & Sanders and Edwin S. Booth, for defendant.

HUNT, District Judge. Yeung Chu Keng, a Chinese person, was arrested on the 25th of April, 1905, at Billings, Mont., charged with being unlawfully within the United States, in violation of the act of Congress approved May 6, 1882, and the acts amendatory thereto and supplementary thereof. The Chinaman was taken before F. P. Sterling, a United States commissioner at Helena, Mont., where he pleaded that he was not unlawfully within the United States, but lawfully therein, and entitled to be and remain in the United States. Upon May 16th the matter was heard by United States Commissioner

Sterling, the government being represented by the assistant United States district attorney for the district of Montana, and the defendant by his counsel. After hearing the evidence, the commissioner decided that the defendant was entitled to be and remain in the United States and ordered that he be discharged. Immediately after the order of discharge had been made by the United States commissioner, the defendant was arrested again by a Chinese inspector of the United States Immigration Service, and a complaint was filed in this court, charging that the defendant, a Chinese person, was unlawfully in the United States of America, in violation of the Chinese exclusion act approved May 6, 1882, and the acts amendatory thereof and supplementary thereto, and praying for a warrant of apprehension. The defendant was apprehended and brought before this court.

Through his counsel, he has interposed what is styled a "plea in bar," wherein are recited the facts of his first arrest, of his trial and hearing before the United States commissioner, of the determination of the commissioner that he was entitled to remain in the United States, of his discharge, and the fact of his arrest by warrant issued out of this court. The defendant then sets forth that United States Commissioner Sterling, before whom defendant was taken in the original action and the issue joined thereon, had concurrent, original, final, and complete jurisdiction of the said matter with the judge of this court, and that upon the defendant being taken before such commissioner, and the issue of his right to be and remain in the United States having been tried and determined, the jurisdiction of the commissioner became exclusive, and this court and the judge thereof have no jurisdiction to hear and determine the question of the right of the defendant to be and remain in the United States; hence, that the judgment of the commissioner is a bar to the further prosecution of this action. The defendant appends to his plea a certified copy of the proceedings before Commissioner Sterling in the investigation had by that officer.

It appears from the reasons given in the opinion of the commissioner, which is certified, that the defendant offered a certificate issued under the treaty between the government of the United States of America, and the government of China, in conformity with section 6 of the act of Congress of the United States, approved July 5, 1884 (23 Stat. 116, c. 220 [U. S. Comp. St. 1901, p. 1307]). The commissioner held that the certificate showed the identification of the defendant at the time of his landing, and that he believed from the evidence of the defendant himself that he was a merchant, notwithstanding that the certificate showed that the defendant was a salesman and accountant, instead of a merchant; that at the time defendant secured his certificate, he was in fact a merchant, and had an interest in a large mercantile establishment at Hong Kong; and that he went to San Francisco as a merchant, and assumed charge of a grocery house which had been left to him and his brother under the last will and testament of his father.

The district attorney makes no point upon any informality of the plea interposed by the defendant. Nor is there any question in the case of fraud or misconduct or abuse on the part of the commissioner. It is also agreed that the court may pass upon the single question whether,

after a Chinese person charged with being unlawfully in the United States has had a hearing regular in form before a United States commissioner, and it has been adjudged by the commissioner that such Chinese person is "entitled to be and remain within the United States," and after the commissioner has made an order discharging such person, he may again be apprehended and proceeded against upon complaint instituted in a District Court of the United States in the district in which the commissioner has exercised such authority as is just referred to. I shall hold that he cannot be, where the proceeding before the commissioner appears to have been regular, and a hearing has been had, and a decision regularly made. The ruling of the commissioner may have been erroneous—that is, against the evidence or contrary to law; but, in the absence of some showing of fraud or gross irregularity amounting to positive abuse, his judgment must be regarded as a determination of the issue.

This conclusion is reached after considering that the proceeding to inquire into the status of a Chinese person charged with being unlawfully within the United States is intended to be summary in its character. The commissioner has the same power and authority that the judge of this court would have in such an investigation. His function is that of a judicial officer, aiding to ascertain contested facts on which the alien's right to be in the country has been made by Congress to depend. Fong Yue Ting v. United States, 149 U. S. 698, 13 Sup. Ct. 1016, 37 L. Ed. 905. Congress might have intrusted the final determination of the facts on which the right to remain in the United States depends to executive officers, and their judgment of the existence of those facts might have been made final. It has not done so, but the fact that it has authorized judicial investigation does not justify the opinion that repeated investigation may be had, where the status of the Chinese person has been once regularly investigated, and he has been discharged, and the government seeks another investigation upon substantially the same facts as it relied on in the first inquiry.

The Supreme Court held, in Nishimura Ekiu's Case, 142 U. S. 651, 12 Sup. Ct. 336, 35 L. Ed. 1146, that while Congress might authorize courts to investigate and ascertain the facts upon which an alien's right to land was made by the statutes to depend, "yet Congress might intrust the final determination of those facts to an executive officer, and, if it did so, his order was due process of law, and no other tribunal, unless expressly authorized by law to do so, was at liberty to reexamine the evidence on which he acted, or to controvert its sufficiency." And again in Fong Yue Ting's Case, supra, the court held that the proceeding is but a method of enforcing the return to his own country of an alien who has not complied with the conditions upon the performance of which the national government, acting through the proper department, has determined that his continuing to reside in the United States shall depend.

The power to exclude or expel aliens, being a power affecting international relations, is vested in the political departments of the government, and is to be regulated by treaty or by act of Congress, and to be

executed by the executive authority, according to regulations establish-ed, except so far as the judicial department has been authorized by treaty or by statute, or is required by the Constitution, to intervene. Fong Yue Ting v. United States, 149 U. S. 709, 13 Sup. Ct. 1016, 37 L. Ed. 905. We read that the executive authority alone under treaty stipulations was once exercised by the President in certain instances, involving the surrender of persons found in this country charged with crime in another. Congress, however, later on provided for preliminary examinations before a judge or commissioner; but the authorities are that in such cases the sufficiency of the evidence on which he acts can-not be reviewed by any other tribunal, except as permitted by statute. In re Oteiza, 136 U. S. 330, 10 Sup. Ct. 1031, 34 L. Ed. 464. The reasoning of the Supreme Court regards investigation into the status of Chinese persons as comprehended within those matters which Justice Curtis, in Murray v. Hoboken Co., 18 How. 272, 15 L. Ed. 372, dis-cussed as "involving public rights which may be presented in such form that the judicial power is capable of acting on them, and which are susceptible of judicial determination, but which Congress may or may not bring within the cognizance of the courts of the United States, as it may deem proper."

The proceeding before a commissioner or judge, as provided for in section 6 of the act of May 5, 1892 (27 Stat. 25, c. 60 [U. S. Comp. St. 1901, p. 1320]), is in no proper sense a trial and sentence for a crime or offense; nor is an order of deportation a punishment for crime. The whole proceeding is a method for the ascertainment of a fact, whether certain conditions exist. Upon what conditions aliens shall be permitted within the United States is a question to be determined by the political department of the government. United States v. Ju Toy, 198 U. S. 253, 25 Sup. Ct. 644, 49 L. Ed. 1040. If, when a Chinese person is discharged by a United States commissioner after hearing, another complaint may be laid before a United States District Court or judge, based upon the same facts, it is in effect a re-examination into the facts. If one re-examination may be had, why not several before different commissioners? As shown, this cannot be had, where discre-tionary power is vested in an executive authority, unless authorized by statute; and by analogy, where, as in Chinese deportation cases, judicial aid is invoked to ascertain facts in aid of the exercise of polit-ical and executive measures, if it has been regularly pursued, I do not believe that another ascertainment is permissible, unless fraud or abuse is relied on. Certainly there is no express power given by statute to this court to revise a decision by a commissioner in a Chinese case, where the defendant has been discharged (no appeal even is given to the government), and in the absence of such express power of revision this court does not possess authority to do that which in practical effect is revision.

I therefore hold that a commissioner exercises special authority in Chinese cases. Where, after a hearing regularly had, he finds and ad-judges the Chinaman not lawfully entitled to be or remain in the United States, he shall order deportation. Where he fails so to find, the log-

ical result is release from the charge, and unless fraud or abuse on the commissioner's part is shown, no right of review exists in this court. In re Wood (D. C.) 95 Fed. 288.

The proceeding is dismissed.