LIM JEW v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. May 13, 1912.)

No. 1,968.

1. JUDGMENT (§ 713*)—CONCLUSIVENESS.
    Where an action is sought to be maintained on a claim involved in a prior action, the judgment in the prior action concludes every fact necessary to uphold it, and extends not only to matters actually determined, but to every other matter which the parties might have litigated and have had decided as connected with the subject-matter of the litigation; but, where the second action is sought to be maintained on a different claim, the prior judgment operates only as an estoppel against matters actually litigated, or as to facts distinctly in issue and on which the judgment is predicated.
    [Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1063, 1066, 1099, 1234–1237, 1239, 1241, 1247; Dec. Dig. § 713.*]

2. JUDGMENT (§ 720*)—CONCLUSIVENESS.
    A judgment on a question directly involved in one action is conclusive as to that question in another action between the same parties, where it appears from the record or by extrinsic evidence that the precise question was raised and determined in the prior action, and any uncertainty on the subject must be dispelled by proof; otherwise, the entire subject-matter of the subsequent action is open to litigation.
    [Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1251; Dec. Dig. § 720.*]

3. JUDGMENT (§ 715*)—CONCLUSIVENESS—DEPORTATION PROCEEDINGS—ESTOPPEL.
    Where, in a proceeding to determine the right of a Chinese person to re-enter the United States, it was found that he had been a resident of the United States prior to November 18, 1880, and hence entitled to re-enter, but the question of his nativity was not directly involved nor determined, a judgment permitting him to resume his residence in the United States did not estop the United States to thereafter deny, in a subsequent deportation proceeding, that he was a natural-born citizen.
    [Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1244–1246; Dec. Dig. § 715.*]

4. ALIENS (§ 32*)—RIGHT TO ENTER UNITED STATES—DECISIONS OF EXECUTIVE OFFICERS OF FEDERAL GOVERNMENT—CONCLUSIVENESS.
    The executive officers of the federal government, when so empowered, may examine into and determine finally as to the facts on which depend the rights of aliens to enter or to remain within the United States, and, when they have acted within the scope of their authority, their findings are conclusive and not subject to re-examination by any other tribunal except as are expressly authorized by law.
    [Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 93–95; Dec. Dig. § 32.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**5.** ALIENS (§ 32*)—RIGHT TO ENTER UNITED STATES—DECISIONS OF EXECU-
TIVE OFFICERS OF FEDERAL GOVERNMENT—CONCLUSIVENESS.

Where the decision of immigration officers is favorable to the right
of Chinese persons to enter the United States, the decision is not review-
able by the Secretary of the Treasury or the Secretary of Commerce
and Labor, under Act Aug. 18, 1894, c. 300, 28 Stat. 372 (U. S. Comp.
St. 1901, p. 3313), and is not conclusive of the jurisdiction of the federal
courts.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 93–95; Dec.
Dig. § 32.*

What Chinese persons are excluded from the United States, see note
to Wong You v. United States, 104 C. C. A. 538.]

**6.** ALIENS (§ 32*)—DEPORTATION—DEPARTMENT OF IMMIGRATION—DECISION
—CONCLUSIVENESS.

Under Act Feb. 14, 1903, c. 552, 32 Stat. 825 (U. S. Comp. St. Supp.
1911, p. 114), transferring jurisdiction of immigration affairs from the
Secretary of the Treasury to the Secretary of Commerce and Labor,
and Act Feb. 20, 1907, c. 1134, § 25, 34 Stat. 906 (U. S. Comp. St. Supp.
1911, p. 515), providing that where an alien is excluded the decision
of the immigration officers shall be final unless reversed on appeal to
the Secretary of Commerce and Labor, a decision of the Commissioner
of Immigration admitting a Chinese person into the United States on
the theory that he is a native of the United States and entitled to re-
enter as such, is not res judicata as against an action of the board of
immigration looking to a deportation of him, as being unlawfully within
the United States, within three years after his re-entry, nor does it
estop the United States from proceeding in the courts to determine his
right to remain in the United States, and the prima facie effect of the
certificate which be produced to the Commissioner of Immigration is
subject to be controverted, and the facts therein stated disapproved by
the government authorities.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 93–95; Dec.
Dig. § 32.*]

In Error to the District Court of the United States for the North-
ern District of California.

Chinese deportation proceedings by the United States against Lim
Jew. There was an order of the District Court (192 Fed. 644) affirm-
ing a deportation order, and defendant brings error. Affirmed.

This proceeding was instituted before a United States Commissioner by
the government against Lim Jew, the plaintiff in error, to determine whether
he is subject to deportation to China on the ground that he is not lawfully
entitled to remain in this country. Deportation was ordered, and on appeal
to the District Court the judgment was affirmed. Error is now prosecuted
to this court.

The agreed statement of facts upon which the cause was submitted to
the Commissioner, and upon which the same was determined by the District
Court, is, in brief, as follows:

First. The defendant, plaintiff in error here, testified that he was born at
No. 1107 Dupont street, San Francisco, Cal., about January 30, 1875. He
produced no other witness in support of the fact, and was not believed by
the Commissioner.

Second. In a habeas corpus proceeding instituted in the United States
Circuit Court for the Northern District of California August 18, 1888, en-
titled In the Matter of Lim Jew on Habeas Corpus, No. 9,203, plaintiff in
error, being petitioner in said cause, was discharged from custody and per-
mitted to resume his residence in the United States. The judgment was
entered August 23, 1888, and it appears therefrom that plaintiff in error had

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

196 F.—47

been a resident of the United States prior to the 19th day of November, 1880, and was therefore entitled to re-enter the same. The proceeding was resorted to by plaintiff in error for the purpose of securing his landing upon a return trip from China. No declaration appears in the record as to, the place of plaintiff in error's nativity.

Third. The plaintiff in error, under the Act of Congress of November 3, 1893, c. 14, 28 Stat. 7 (U. S. Comp. St. 1901, p. 1321), entitled "An act to amend an act entitled 'An act to prohibit the coming of Chinese persons into the United States,' approved May 5, 1892," procured a certificate of registration, No. 71,475, under the name of Wong Young, in which certificate he was described as a laborer. From the application made for the certificate which was sworn to by the applicant and signed "Wong Young," also by the affidavit of one witness, it appears that the applicant came into the United States in 1880 per steamer; no declaration being made as to the place of his birth.

Fourth. The plaintiff in error went to China in 1901 and returned to the United States in 1902 as a resident laborer, and was permitted to re-enter by the government officials. On leaving the United States he swore that he was a registered Chinese laborer, to wit, a laundryman, and procured a return certificate duly and regularly made out showing these facts, which he used in procuring his landing on his return. No declaration appears to have been made in connection with his departure and return touching the place of his nativity.

Fifth. During the year 1905 plaintiff in error went to China, taking with him a certificate in which he was described as a native-born citizen of the United States, and on his return during the year 1908, after an examination of various witnesses and a search of the records in the Chinese Bureau, the Commissioner of Immigration ordered him admitted into the United States on the ground that he was a native-born citizen thereof, and he was accordingly so admitted, where he has since resided. Plaintiff in error obtained no return certificate as a Chinese laborer.

Sixth. On November 24, 1908, the plaintiff in error made certain proof before the Immigration Department to establish the right of one Lim Bo On, a Chinese, to enter the United States. This proof consisted of an affidavit in which the plaintiff in error swore that Lim Bo On was his son, and that he (the defendant) had for more than a year last past been engaged in conducting certain business as a merchant at No. 147 Waverly Place, city and county of San Francisco, as a member of the firm of Din Kee & Co. This Lim Bo On in February, 1909, arrived at the port of San Francisco, and sought to be landed, and thereupon certain additional testimony was taken in the matter of his right to be in the United States. The defendant had appeared as a witness and swore that he was the father of Lim Bo On and that he was a merchant, and, on being asked if he had ever registered, the plaintiff in error replied, "No; I was then a merchant." On being asked how many times he had been to China, he stated that he had been but once, when he was about 19 years old; that he returned in August, 1888, and was landed on the court's order in case No. 9,202. He also swore in the same testimony that he was born in the United States at 1107 Dupont street.

Seventh. The records of the United States Immigration Department also show that in the year 1905 plaintiff in error went to China, and that between that date and his return to the United States in 1908 he was absent from the United States.

Eighth. Plaintiff in error, on being sworn, testified that he had gone to China in 1879 with his uncle and returned in the year 1888, and was landed by the United States Circuit Court.

Samuel M. Shortridge, of San Francisco, Cal., for plaintiff in error.
Robert T. Devlin, U. S. Atty., and Benjamin L. McKinley, Asst. U. S. Atty.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge (after stating the facts as above). Counsel for plaintiff in error insists upon two propositions:

First. That the judgment in the habeas corpus proceeding rendered August 23, 1888, discharging the plaintiff in error from the custody of the custom officers and permitting him to resume his residence in the United States, is an estoppel and a bar to the present proceeding by the government for deportation.

Second. That the order of the Commissioner of Immigration, admitting the plaintiff in error into the United States upon his return thereto in the year 1908, is res judicata as to the matter in controversy, and for that reason the present proceeding ought not to be entertained.

[1] Where a suit, action, or proceeding is sought to be maintained upon the same claim, a previous judgment concerning it, as an estoppel, is very broad in its effect. It concludes every fact necessary to uphold it, and extends not only to matters actually determined, but to every other matter which the parties might have litigated and have had decided as incident to and essentially connected with the subject-matter of the litigation. But the rule is otherwise where the second action or proceeding is sought to be maintained upon a different claim. There the prior judgment will only operate as an estoppel against matters actually litigated, or as to facts distinctly in issue and upon which such judgment is predicated. These principles are well established. Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 195; White v. Ladd, 41 Or. 324, 332, 68 Pac. 739, 93 Am. St. Rep. 732.

[2] It is also settled law that a judgment upon a question directly involved in one suit is conclusive as to that question in another suit between the same parties; but to have this operation it must appear from the record or be shown by extrinsic evidence that the precise question was raised and determined in the former suit. Any uncertainty on this head must be dispelled by extrinsic proof; otherwise the entire subject-matter of the action will be set at large upon the new contention. Russell v. Place, 94 U. S. 606, 24 L. Ed. 214.

[3] From the very nature of the litigation, the proceeding now invoked, while between the same parties, is essentially upon a different claim than the one advanced for relief under the habeas corpus proceedings of 1888. There the plaintiff in error had been abroad to China and was seeking readmission into the United States. The judgment determined his right to be *then* readmitted. By the present proceeding the petitioner is seeking to establish his right to re-entry in the year 1908, having again been without the dominion of the United States; his right *now* depending upon the question whether he is a native-born citizen of this country. Now it does not appear that the question was directly or actually litigated in the former proceeding. This as to the estoppel where the suit is upon a different claim. But as it relates to the fact that the proceeding is between the same parties, the former record does not show, nor is there a scintilla of proof, extrinsic or otherwise, to establish the fact, that the question of the place of petitioner's nativity was directly or at all involved or determined in that litigation. This leaves the question at large here and

entirely open for the new contention, so that the habeas corpus proceedings instituted in 1888 determining the plaintiff in error's right to then re-enter the United States do not now constitute an estoppel or bar to the present action.

The second proposition requires a more extensive examination. The decision of the Commissioner, as has been previously observed, turned upon the question of the place of plaintiff in error's nativity, it being held by that officer that he was a native of the United States, and hence it was concluded that he was entitled to re-entry. If the officer had held otherwise, it would have been incumbent upon him to reject the petitioner. It appears that, when the plaintiff in error departed for China in 1905, he took with him a certificate in which he was described as a native-born citizen of the United States. This certificate was used as evidence of· his right of re-entry in 1908. Hence he could not have. re-entered except as a native-born citizen, certainly not as a laborer, as the latter's right would depend upon another kind of, certification.

[4] Executive officers of the general government, when so empowered, may examine into and determine finally as to the facts upon which depend the rights of aliens to enter .or to remain within the dominion·of the United States, and, when they have acted within the scope of their authority, their findings are conclusive and are not subject to re-examination by any other tribunal except by such as are expressly authorized by law so to do. The Japanese Immigrant Case, 189 U. S. 86, 23 Sup. Ct. 611, 47 L. Ed. 721; Nishimura Ekiu v. U. S., 142 U. S. 651, 12 Sup. Ct. 336, 35 L. Ed. 1146; Lem Moon Sing v. United States, 158 U. S. 538, 15 Sup. Ct. 967, 39 L. Ed. 1082.

The principle was applied and its relevancy is well illustrated in the Nishimura Ekiu Case. Having arrived at the port of San Francisco, she was refused landing and restrained of her liberty subject to her return to Japan, from whence she came, by the Commissioner of Immigration. She thereupon petitioned the Circuit Court for a writ of habeas corpus whereby to be released from custody, and the cause came on for hearing upon the return of the Commissioner showing why he detained the petitioner. Being unsuccessful in the Circuit Court, she prosecuted an appeal to the Supreme Court. The Commissioner justified under the act of March 3, 1891, entitled "An act in amendment to various acts relative to immigration and the importation of aliens under contract or agreement to perform labor" (chapter 551, 26 Stats. 1084, 1085 [U. S. Comp. St. 1901, p. 1294]), and insisted that his finding and decision were subject to review only by the superintendent of immigration and the Secretary of the Treasury. The act provided, among other things, that:

"All decisions made by the inspection officers or their assistants touching the right of any alien to land, when adverse to such right, shall be final unless an appeal be taken to the superintendent of immigration, whose action shall be subject to review by the Secretary of the Treasury."

In construing the clause, the Supreme Court, speaking through. Mr. Justice Gray, says:

"The decision of the inspector of immigration being in conformity with the act of 1891, there can be no doubt that it was final and conclusive against

the petitioner's right to land in the United States. The words of section 8 are clear to that effect, and were manifestly intended to prevent the question of an alien immigrant's right to land, when once decided adversely by an inspector, acting within the jurisdiction conferred upon him, from being impeached or reviewed, in the courts or otherwise, save only by appeal to the inspector's official superiors, and in accordance with the provisions of the act.

"Section 13, by which the Circuit and District Courts of the United States are 'vested with full and concurrent jurisdiction of all causes civil and criminal arising under any of the provisions of this act,' evidently refers to causes of judicial cognizance, already provided for, whether civil actions in the nature of debt for penalties under sections 3 and 4, or indictments for misdemeanors under sections 6, 8, and 10. Its intention was to vest concurrent jurisdiction of such causes in the Circuit and District Courts; and it is impossible to construe it as giving the courts jurisdiction to determine matters which the act has expressly committed to the final determination of executive officers."

Hence the judgment of the Circuit Court was affirmed.

The case of Lem Moon Sing is also instructive. Prior to the passage of the appropriation act of Congress of August 18, 1894, Lem Moon Sing was a Chinese merchant having a permanent domicile in this country and engaged in the mercantile business in the city and county of San Francisco, Cal. While conducting such business, he departed for China on a temporary visit, with the intention of returning and continuing his residence in this country. He returned November 3, 1894, and upon his arrival applied to the Collector of Customs to be permitted to land, submitting credible testimony touching his business occupation previous to departing from the United States, but was denied a landing by that officer and remained in the custody of the officer of the ship upon which he returned. It was during his absence that the act of August 18, 1894 (28 Stats. 372), was passed. That act, at page 390, contained the following provision:

"In every case where an alien is excluded from admission into the United States under any law or treaty now existing or hereafter made, the decision of the appropriate immigration or customs officers, if adverse to the admission of such alien, shall be final, unless reversed on appeal to the Secretary of the Treasury."

Lem Moon Sing brought proceedings in the District Court of the United States by habeas corpus for his release. The writ was denied because the petition therefor showed on its face that the applicant was detained and restrained of his liberty by the Collector of the Port of San Francisco under the act of Congress of August 18, 1894, and hence that jurisdiction over the petitioner was with that officer and not the court. An appeal was prosecuted to the Supreme Court. In disposing of the case the court says:

"The remedy of the appellant was by appeal to the Secretary of the Treasury from the decision of his subordinate, and not to the courts. If the act of 1894 had done nothing more than appropriate money to enforce the Chinese Exclusion Act, the courts would have been authorized to protect any right the appellant had to enter the country, if he was of the class entitled to admission under existing laws or treaties, and was improperly excluded. But when Congress went further, and declared that, in every case of an alien excluded by the decision of the appropriate immigration or customs officers 'from admission into the United States under any law or treaty,'

such decision should be final, unless reversed by the Secretary of the Treasury, the authority of the courts to review the decision of the executive officers was taken away."

The effect of the act of August 18, 1894, came up again for decision in the case of United States. v. Sing Tuck, 194 U. S. 161, 24 Sup. Ct. 621, 48 L. Ed. 917. The case was habeas corpus against a Chinese inspector and inspector of immigration, wherein the Circuit Court adjudged the detention to be lawful. This judgment was reversed by the Circuit Court of Appeals, and certiorari was prosecuted by the government to the Supreme Court. The inspector decided against the right of the Chinamen, of whom there were five, to enter this country, and informed them of their right to appeal to the Secretary of Commerce and Labor; the jurisdiction of the Treasury Department having been transferred to the Department of Commerce and Labor by the act of February 14, 1903 (32 Stat. 825). No such appeal was taken, and, while the Chinamen were yet detained for deportation, they petitioned the court for a writ of habeas corpus, and for their release, alleging that they were all citizens of the United States. The kernel of the controversy was touching their citizenship; but the court determined that the orderly way was for the Chinamen to have appealed to the Secretary of Commerce and Labor as provided for in the act of 1894, and that, unless such an appeal was taken and decided, a writ of habeas corpus should be denied, applying the doctrine of Minnesota v. Brundage, 180 U. S. 499, 21 Sup. Ct. 455, 45 L. Ed. 639, and Baker v. Grice, 169 U. S. 284, 18 Sup. Ct. 323, 42 L. Ed. 748.

But it was held in a later case (U. S. v. Ju Toy, 198 U. S. 253, 25 Sup. Ct. 644, 49 L. Ed. 1040) that:

"Under the Chinese exclusion, and the immigration, laws, where a person of Chinese descent asks admission to the United States, claiming that he is a native-born citizen thereof, and the lawfully designated officers find that he is not, and upon appeal that finding is approved by the Secretary of Commerce and Labor, and it does not appear that there was any abuse of discretion, such finding and action of the executive officers should be treated by the courts as having been made by a competent tribunal, with due process of law, and as final and conclusive; and in habeas corpus proceedings, commenced thereafter, and based solely on the ground of the applicant's alleged citizenship, the court should dismiss the writ and not direct further evidence as to the question of citizenship."

The quotation is from the headnote of the opinion.

[5] Where, however, the decision of the customs or immigration officer is favorable to the right of Chinese persons to enter the United States, the same is not reviewable by the Secretary of the Treasury or the Secretary of Commerce and Labor under the act of August 18, 1894, and consequently is not conclusive of the jurisdiction of the federal courts. In re Li Sing, 86 Fed. 896, 30 C. C. A. 451. It was so determined on appeal to the Supreme Court (Li Sing v. United States, 180 U. S. 486, 490, 21 Sup. Ct. 449, 451 [45 L. Ed. 634]), the court there saying:

"And in the case of Lem Moon Sing v. United States, 158 U. S. 538, 547 [15 Sup. Ct. 967, 39 L. Ed. 1082], it was held, expounding the act of August

18, 1894, that the decision of the appropriate immigration or custom officers excluding an alien from admission into the United States, under any law or treaty, is made final in every case, unless on appeal to the Secretary of the Treasury it be reversed. But it is obvious that it is only when the decision of the customs officer excludes an alien from admission that his decision is final. When his decision admits the alien, then the provisions of the act of July 5, 1884 (chapter 220, 23 Stat. 115 [U. S. Comp. St. 1901, p. 1305]), are still applicable, which provide that, notwithstanding the contents of the certificate exhibited to the Collector of Customs, and their prima facie effect, 'said certificate may be controverted and the facts therein stated disproved by the United States authorities.' Accordingly, we agree with the courts below in holding that the judgment of the Collector of Customs at Malone did not conclude the Commissioner, and that the latter had authority, under the statutes, to hear and determine the question whether Li Sing was entitled to remain within the limits of the United States."

In this case the Chinaman, having been a resident of New Jersey, and having been absent to China for the space of about three years, on his return to this country by way of Canada presented his certificate, wherein he was styled a wholesale grocer, to the Collector of Customs at Malone, N. Y., who canceled it and permitted him to enter. This was on August 28, 1896. On January 6, 1897, the United States inspector for the port of New York complained to a United States Commissioner that Li Sing was unlawfully within the United States, and that he was and had been for many years a Chinese laborer. Li Sing claimed before the Commissioner that the action of the customs officer permitting him to re-enter the United States was res judicata, and conclusive of his right to remain; but it was held, after a consideration of the testimony introduced pro and con, that he was a Chinese laborer and unlawfully in the country, and his deportation was ordered. Li Sing thereupon sued out a writ of habeas corpus in the Circuit Court of the United States, which after hearing was dismissed. An appeal was prosecuted to the Circuit Court of Appeals, which affirmed the judgment. The case was then taken to the Supreme Court with like result.

By the act of March 3, 1903, entitled "An act to regulate the immigration of aliens into the United States" (chapter 1012, 32 Stats. 1213), it was provided, by its twenty-fourth section that:

"Every alien who may not appear to the examining immigrant inspector at the port of arrival to be clearly and beyond a doubt entitled to land, shall be detained for examination in relation thereto by a board of special inquiry."

The twenty-fifth section provides for the appointment of such boards of inquiry, and it is declared that:

"Such boards shall have authority to determine whether an alien who has been duly held shall be allowed to land or be deported. * * * And the decision of any two members of a board shall prevail and be final, but either the alien or any dissenting member of said board may appeal, through the Commissioner of Immigration at the port of arrival and the Commissioner General of Immigration to the Secretary of the Treasury, whose decision shall then be final."

Section 21 of the act empowers and requires the Secretary of the Treasury, when satisfied that an alien has been found in the United States in violation of the act, to cause such alien within the period of

three years after landing or entry therein to be taken into custody and returned to the country from whence he came, as provided by section 20 of the act.

[6] As has been noted, the jurisdiction of immigration affairs was, by the act of February 14, 1903, supra, transferred to the Secretary of Commerce and Labor.

This statute of March 3, 1903, as it relates to the provisions outlined, came up for construction in the case of Pearson v. Williams, 202 U. S. 281, 26 Sup. Ct. 608, 50 L. Ed. 1029. The facts were these: On February 1, 1904, certain British aliens desiring to enter the United States were examined by a board of special inquiry and allowed to land. Afterwards, in March, they were arrested by order of the Secretary, and after another hearing before a board of special inquiry were ordered to be returned to England, as being in this country in violation of the act. A writ of habeas corpus was sued out in the Circuit Court to secure their release, and that court discharged the petitioners. On appeal to the Circuit Court of Appeals, the judgment was reversed, and its holding was sustained by the Supreme Court. The latter court, construing section 21 in connection with sections 24 and 25 of the Immigration Act, held that the Secretary had the right and power to direct a second inquiry, although petitioners had been allowed to land under the first inquiry. Speaking further of the board of inquiry, the court says:

"The board is an instrument of the executive power, not a court," and that the "decisions of a similar type (of tribunal) long have been recognized as decisions of the executive department and cannot constitute res judicata in a technical sense."

But it was further held that the words making the decisions of the board of inquiry final were intended to make them final in the courts, where they were most likely to be questioned. Thus while the action of the board of inquiry was not res judicata, barring its further inquiry within three years, yet that its decisions were final and conclusive as against the jurisdiction and authority of the courts to question them.

By a later act of Congress touching the same subject-matter, namely, the act of February 20, 1907 (34 Stats. at Large, 898, 905, 906, 907), section 25 was amended so as to read, "And the decision of any two members of the board shall prevail," dropping the words "and be final," and adding a proviso, "That in every case where an alien is excluded from admission into the United States, under any law or treaty now existing or hereafter made, the decision of the appropriate immigration officers, if adverse to the admission of such alien, shall be final, unless reversed on appeal to the Secretary of Commerce and Labor," thus reinstating the law respecting the finality of the decisions of the immigration officers as it stood prior to the act of March 3, 1903.

The present controversy arises under this statute, and, in the light of the history of the enactment and of the foregoing decisions of the Supreme Court, may now be readily resolved.

The action of the Commissioner of Immigration in ordering the

defendant admitted into the United States was not res judicata as against any further action of the board of immigration looking to a deportation of the defendant, as being unlawfully within this country, within three years after his entry herein; nor was such action, being in favor of the defendant's admission, and not adverse thereto, a bar, nor an estoppel against the government proceeding in the courts for determining the defendant's rights to remain in this country. As was said in Li Sing v. United States, supra, under a statute identical in effect with the present act, the court conceding the conclusive effect of the findings and judgment of executive officers of the government when made so by statute, as had been previously determined:

"It is only when the decision of the customs officer excludes an alien from admission that his decision is final."

And this decision is authority for the view that the prima facie effect of the certificate which the defendant produced to the Commissioner of Immigration was subject to be controverted and the facts therein stated disproved by the government authorities.

These considerations lead to an affirmance of the judgment of the District Court, and it is so ordered.