## Ex parte WONG YEE TOON.

(District Court, D. Maryland. November 6, 1915.)

1. ALIENS ⊂⊃23—CHINESE EXCLUSION ACT—ADMISSION AS MEMBER OF EXEMPT CLASS.

A minor son of a Chinese person who is a member of one of the exempt classes, admitted as such into the United States, does not forfeit his right to remain by subsequently working as a laborer.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 76-90; Dec. Dig. ⊂⊃23.]

2. ALIENS ⊂⊃32—PROCEEDINGS FOR DEPORTATION OF CHINESE—SUFFICIENCY OF CHARGE.

Technical objections to the form of the warrants in Chinese deportation cases are not sustainable, when it appears that the alien had notice of the

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

actual charge against him in time to meet it and had a fair hearing
thereon.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec.
Dig. ☞32.]

3. ALIENS ☞32—PROCEEDINGS FOR DEPORTATION OF CHINESE—FAIRNESS OF
HEARING.

The fact alone that a Chinese alien before, at, or after his arrest was
interrogated without counsel being present does not show that his hearing
was not fair, although it is a circumstance which may be considered.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec.
Dig. ☞32.]

4. ALIENS ☞32—PROCEEDINGS FOR DEPORTATION OF CHINESE—EVIDENCE.

The fact that a Chinese alien was allowed to land is not the equivalent
of a certificate of status or residence, and does not shift the burden of
proof from him in subsequent proceedings for his deportation.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec.
Dig. ☞32.]

5. ALIENS ☞32—PROCEEDINGS FOR DEPORTATION OF CHINESE—SUFFICIENCY
OF EVIDENCE.

In proceedings for deportation of a Chinese person before administra-
tive officers, if the evidence is such as might lead a fair and reasonable
man to think that the charge against the defendant was made out, their
decision is not reviewable by the courts.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec.
Dig. ☞32.]

Petition for habeas corpus by Wong Yee Toon. Writ denied.

Harold B. Scrimger and Irvin B. Scrimger, both of Baltimore, Md.,
for petitioner.

Samuel K. Dennis, U. S. Atty., and James A. Latane, Asst. U. S.
Atty., both of Baltimore, Md., for respondent.

ROSE, District Judge. The petitioner is about to be deported un-
der a warrant issued by the Secretary of Labor. He seeks his release
by habeas corpus. He says he is about 19 years old. He looks younger.
According to his story, he is the son of one Wong Que Teung, alias
Wong Kus, a merchant long domiciled in Oakland, Cal. As such son
the petitioner, on the 7th of November, 1913, was admitted by the
immigrant officials at the port of San Francisco. A little over a year
later he was found living with a Chinese laundryman in Baltimore.
The immigration office secured some evidence which led it to think
that he was employed as a laborer.

On the 22d of January, 1915, the Assistant Secretary of Labor is-
sued a warrant for his arrest on various grounds, which may be sum-
marized as that he was a Chinese laborer, without certificate of resi-
dence; that he procured his admission to this country by fraud, not
being at the time of entry a minor son of a member of the exempt
classes; and that at such time he was under 16, and was not accom-
panied by at least one of his parents. The petitioner was given a full
and even elaborate hearing, at which he was represented by counsel.
The entire record of the proceedings which led to his admission at San
Francisco was put in evidence. The government called witnesses, and
so did he, all of whom were examined and cross-examined. It ap-

peared that, on his arrival at San Francisco, the inspector who had immediate charge of the investigation reported that the petitioner was not the son of the Oakland merchant, but that on review by the superior officials he was admitted. On the question of his paternity there was in the deportation proceedings submitted very little evidence which had not been considered before he was allowed to land.

All that was really new in the case made in Baltimore is that, very shortly after the boy arrived in California, the alleged father sent him clear across the continent to a laundryman here. The latter's relationship, if any, to either the father or the son, is, by petitioner's witnesses, variously and vaguely stated. The statements of the man in question are of such a character as to lead the immigrant officials to conclude that he is unworthy of belief. No letters have passed between the alleged father and the petitioner, and the former does not claim to have sent for the latter's support during an entire year more than $60. At the conclusion of the hearing, the local immigration authorities decided that he should be deported. He took an appeal to the Secretary of Labor, with whom his counsel filed elaborate briefs. On the 3d of July of this year the Secretary issued his warrant of deportation, in which the grounds specified were substantially the same as those in the warrant of arrest, except that the Secretary held that the weight of evidence showed that the petitioner, at the time of his admission, was over 16 years of age.

[1] At the hearing before me the government did not seriously contend that the order of deportation could be sustained on the ground that the petitioner was a Chinese laborer, not in possession of a certificate of residence. There is some evidence that he did some work in the laundry. It is for most purposes, at least, immaterial whether he did or did not. It is well settled that a minor son of a member of the exempt classes, admitted as such into the United States, does not forfeit his right to remain by subsequently doing a laborer's work. Ex parte Lew Lin Shew (D. C.) 217 Fed. 317; United States v. Louie Juen (D. C.) 128 Fed. 522; In re Yew Bing Hi (D. C.) 128 Fed. 319; United States v. Leo Won Tong (D. C.) 132 Fed. 190; United States v. Seid Bow (D. C.) 139 Fed. 56; In re Chin Ark Wing (D. C.) 115 Fed. 412; United States v. Lee Chee, 224 Fed. 447, —— C. C. A. ——; Lew Ling Chong v. United States, 222 Fed. 195, —— C. C. A. ——; United States v. Yee Quong Yuen, 191 Fed. 28, 111 C. C. A. 500; In re Tam Chung (D. C.) 223 Fed. 801; United States v. Foo Duck (D. C.) 163 Fed. 440; United States v. Foo Duck, 172 Fed. 856, 97 C. C. A. 204. It is true that the last above cited case intimated that, in determining whether a Chinaman who is admitted as an exempt ever was one, consideration may be given to the fact that very shortly after his admission he was found engaged in a nonexempt occupation.

[2] The government rests its right to deport the petitioner on the ground that he is not the son of the Oakland merchant. The petitioner says that neither the warrant of arrest nor that of deportation specified that charge with sufficient particularity. The petitioner and his counsel had seasonable notice that the government claimed that his paternity had been falsely stated. Technical objections to the form of the warrants in these cases are not sustainable, when it appears that the

alien had notice of the actual charge against him in time to meet it and had a fair hearing thereon. Nishimura Ekiu v. United States, 142 U. S. 651, 12 Sup. Ct. 336, 35 L. Ed. 1146; Chin Bak Kan v. United States, 186 U. S. 193, 22 Sup. Ct. 891, 46 L. Ed. 1121; United States v. Hom Lim, 223 Fed. 520, —— C. C. A. ——; United States ex rel. Bauder v. Uhl, 211 Fed. 628, 128 C. C. A. 560; United States ex rel. Rosen v. Williams, 200 Fed. 538, 118 C. C. A. 632; Toy Tong v. United States, 146 Fed. 343, 76 C. C. A. 621; In re NG Wah Chung, 220 Fed. 639, 136 C. C. A. 247; Ex parte Young (D. C.) 211 Fed. 370.

[3] The petitioner denies that he had such a hearing, because, and only because, when first arrested he was examined by the inspector before he had counsel, or any opportunity to procure counsel. Probably there are few or no formal tests by which to determine whether the immigration authorities have given an alien a fair hearing. The real question is: Have they honestly, and by means which would seem fair to a reasonable man, not trained in law, sought to arrive at the truth, in order that they may do justice? If their actions, taken as a whole, show that their inquiry was not a fair and honest effort to obtain such result, their action is not binding on the courts, whether from a technical standpoint their procedure was or was not open to criticism. The way in which, before the petitioner had an opportunity to obtain counsel, or before counsel was admitted, they conducted his examination, and that of other witnesses, may be, in connection with other facts, a weighty circumstance to show that they were not honestly seeking the truth. Ex parte Chin Loy You (D. C.) 223 Fed. 833; Ex parte Lam Pui (D. C.) 217 Fed. 456; Pang Sho Yin v. United States, 154 Fed. 660, 83 C. C. A. 484; Hanges v. Whitfield (D. C.) 209 Fed. 675; Whitfield v. Hanges, 222 Fed. 745, —— C. C. A. ——.

But the mere fact that the alien, before, at, or after his arrest, was interrogated without counsel being present, does not show that his hearing was not fair. On this point the decision of the Supreme Court in Low Wah Suey v. Backus, 225 U. S. 460, 32 Sup. Ct. 734, 56 L. Ed. 1165, is conclusive. To the same effect are In re Madeiros (D. C.) 225 Fed. 90; United States v. Moy Toom (D. C.) 224 Fed. 520; United States v. Lem You (D. C.) 224 Fed. 519; United States ex rel. Buccino v. Williams (C. C.) 190 Fed. 897; United States ex rel. Ivanow v. Greenawalt (D. C.) 213 Fed. 901; Sire v. Berkshire (D. C.) 185 Fed. 967; Siniscalchi v. Thomas, 195 Fed. 701, 115 C. C. A. 501; United States v. Hung Chang, 134 Fed. 19, 67 C. C. A. 93; Prentis v. Seu Leung, 203 Fed. 25, 121 C. C. A. 389.

[4] In this case the petitioner had a perfectly fair and even painstaking hearing. Upon the whole evidence a just man might come to the conclusion that the petitioner was not the son of the merchant whom he claimed as his father. I personally am very doubtful as to whether he is or is not. The Exclusion Acts do not seem just to a Chinaman, and it is not surprising that he feels himself at liberty to evade them by every means in his power. If moral sanctions do not stand in the way of his giving false testimony in order to escape from what seems to him their arbitrary injustice, he seldom has any reason to fear any legal penalties for false swearing. The govern-

ment cannot disprove his statement, or that of witnesses whom he may produce, as to the circumstances of his birth, a score or more years before. Whether the Chinese exclusion policy can or cannot be enforced, therefore, depends upon where the burden of proof is. In proceedings before a United States commissioner or judge to deport a Chinaman, the statute expressly declares that the burden of affirmatively proving his right to be in the United States is on him, and in like manner a Chinaman seeking to enter the United States as a member of the exempt class must satisfy the immigration authorities that he belongs to such class. If this boy had been refused permission to land at San Francisco, the courts could not have helped him. Does the fact that he was allowed to land now shift the burden of proof? If deportation proceedings had been instituted against him before a United States commissioner, and the decision had been in his favor, the judgment would, in the absence of at least a very clear showing of fraud or mistake, have been final and conclusive. United States v. Chin Len, 187 Fed. 544, 109 C. C. A. 310; United States v. Yeung Chu Keng (D. C.) 140 Fed. 748.

But the distinction between a judicial determination and the administrative acts of executive officials in admitting aliens to the country is wide and has often been drawn. Pearson v. Williams, 202 U. S. 281, 26 Sup. Ct. 608, 50 L. Ed. 1029; United States ex rel. Tremaine v. Commissioner of Immigration (D. C.) 209 Fed. 137; Ex parte Stancampiano (C. C.) 161 Fed. 164; Lew Quen Wo v. United States, 184 Fed. 685, 106 C. C. A. 639; Haw Moy v. North, 183 Fed. 89, 105 C. C. A. 381; Lim Jew v. United States, 196 Fed. 736, 116 C. C. A. 364; United States v. Chun Hoy, 111 Fed. 899, 50 C. C. A. 57. In Pearson v. Williams, supra, the same board of special inquiry which admitted the immigrant a month later ordered his deportation. Nor is such act of admission equivalent to a certificate of status or residence, issued in accordance with the provisions of some treaty or statute. Such a certificate imports at least prima facie verity. It cannot be treated as if it had never existed. Some evidence must be produced to justify the immigrant officials denying to it its usual and appropriate effect. Liu Hop Fong v. United States, 209 U. S. 453, 28 Sup. Ct. 576, 52 L. Ed. 888.

My attention has not been called to any cases in which such weight has been given to the mere admission of an alien into this country. In none of the cases above cited, in which the conclusiveness of such admission was denied, did the courts intimate that it was in itself an evidentiary fact sufficient to protect the alien against subsequent deportation, upon the same evidence which had once been held sufficient to require his admission. Some of the intimations to be found in them and some of their reasoning would seem to point to the opposite conclusion; but in no reported case, so far as I am aware, had the very question upon which this case must turn been directly presented and passed upon.

[5] The petitioner has entered this country, he has become subject in all respects to its jurisdiction, and is a part of its population. He cannot be deported, therefore, without hearing. Japanese Immi-

grant Case, 189 U. S. 86, 23 Sup. Ct. 611, 47 L. Ed. 721. One of the essentials of such a hearing is that there shall be some evidence to sustain the charge which is being heard, although in hearings before administrative officials they may doubtless accept testimony that would not be admissible in a court of law. Nishimura Ekiu v. United States, 142 U. S. 651, 12 Sup. Ct. 336, 35 L. Ed. 1146; Lee Lung v. Patterson, 186 U. S. 168, 22 Sup. Ct. 795, 46 L. Ed. 1108; Tang Tun v. Edsell, 223 U. S. 673, 32 Sup. Ct. 359, 56 L. Ed. 606; In re Jem Yuen (D. C.) 188 Fed. 350; Ex parte Watchorn (C. C.) 160 Fed. 1014; United States ex rel. Toy Gwok Chee v. Prentis, 202 Fed. 65, 120 C. C. A. 381; Healy v. Backus, 221 Fed. 358, —— C. C. A. ——. And if the evidence they actually hear is such as might lead a fair and reasonable man to think that the charge was made out, the decision of the administrative officials is in these cases final, and may not be reviewed by the courts.

The petitioner says, however, that the charge in this case is that he secured his admission by fraud, and that upon that issue the government must sustain the burden of proof. Be it so. Nevertheless, if the petitioner is not the son of the Oakland merchant, the charge is true. As already stated, there is, upon the whole evidence, abundant reason to doubt whether he is, and whether he is or is not is an issue to be passed upon by the immigrant officials, and not by the courts. The latter can interfere only when there is a total failure of all evidence upon which a fair-minded man would feel justified in acting. I certainly cannot find that there is any such lack here. If the question were one upon which it was my duty to pass, I am not prepared to say that I would not reach the same conclusion as that upon which the Secretary of Labor has acted.

It follows that the writ of habeas corpus must be dismissed, and the petitioner remanded to the custody of the immigration officials for deportation under the Secretary's warrant.