UNITED STATES v. FONG HONG.

(District Court, D. New Jersey. May 15, 1916.)

1. ALIENS ☞32(8)—CHINESE PERSONS—CERTIFICATES.

Under Act May 6, 1882, c. 126, § 6, 22 Stat. 60, as amended by Act July 5, 1884, c. 220, 23 Stat. 116, and continued by Act May 5, 1892, c. 60, 27 Stat. 25, making the certificate of a Chinese person prima facie evidence of the facts set forth therein, a Chinese person, admitted under a merchant's certificate in due form, is in the exempt class, and cannot be deported for having fraudulently entered the United States, unless there is competent evidence to overcome the effect of the certificate.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 84; Dec. Dig. ☞32(8).]

2. ALIENS ☞23(2)—CHINESE PERSONS—DEPORTATION—MERCHANTS.

The treaty of November 17, 1880 (22 Stat. 826), between the United States and China, authorizes the United States to limit, regulate, or suspend the coming of Chinese laborers, but not to absolutely prohibit it, declaring that the limitation or suspension shall apply only to them, no other class being included and that Chinese subjects, whether proceeding to the United States as teachers, students, merchants, or from curiosity, together with their retinue, shall be accorded all the rights, privileges, and exemptions which are accorded to the citizens and subjects of the most favored nation. Const. art. 6, cl. 2, makes such treaty the supreme

law of the land. *Held* that, where a Chinese person duly enters the country as a merchant, the fact that thereafter he becomes a laborer does not warrant his deportation.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 77; Dec. Dig. ☞23(2).]

Proceeding by the United States for the deportation of Fong Hong, a Chinese person. On appeal from the commissioner's order of deportation. Reversed.

Wm. A. Gray, of Philadelphia, Pa., for Fong Hong.
Joseph L. Bodine, of Trenton, N. J., for the United States.

RELLSTAB, District Judge. Fong Hong, a Chinese subject, was admitted to this country as a Chinese merchant. He had a certificate to that effect issued and viséed according to the United States laws. In compliance with the "Regulations Governing the Admission of Chinese" made by the Secretary of Commerce and Labor, this certificate was taken by the officer in charge of the port of entry (Boston, Mass.), through which he was admitted. In place thereof a certificate of identity was issued to him by said officer on March 22, 1911, which was in Fong Hong's possession at the time of his arrest.

[1] The government concedes that the certificate taken from Fong Hong, at the time of his entry into this country, was regular in form. Under section 6 of the Act of May 6, 1882 (22 Stat. 58, c. 126), as amended by Act July 5, 1884 (23 Stat. 116, c. 220), and continued by Act May 5, 1892 (27 Stat. 25, c. 60), this certificate is made "prima facie evidence of the facts set forth therein, * * * but said certificate may be controverted and the facts there stated disproved by the United States authorities."

The government, while contending that the defendant's certificate was procured by fraud, offered no evidence to establish that fact. The defendant's admission to this country, under a merchant's certificate admittedly in due form, placed him in the exempt class, and "he cannot be deported for having fraudulently entered [the United States], unless there is some competent evidence to overcome the legal effect of the certificate." Liu Hop Fong v. U. S., 209 U. S. 453, 28 Sup. Ct. 576, 52 L. Ed. 888. The uncontradicted evidence shows that the defendant was a merchant in China, that he brought with him about $1,500 in money, $500 of which he subsequently invested in the Hop Wah Company, Chinese grocers of Philadelphia, Pa. This investment he still maintained at the time of his arrest. He was not personally employed in conducting that or any other merchandising. For more than two years he performed no manual labor. Then he began to work in a laundry. These facts, however, are not sufficient evidence of fraud to overcome the prima facie effect of said merchant's certificate, and there is no evidence that would justify the conclusion that the defendant's entry into this country as a merchant was a pretense, or that he then belonged to the excluded class.

The government further contends that, even if the defendant was a merchant at the time of his admission into this country, he subsequently became a laundryman, and therefore a laborer, within section 2 of the Act of November 3, 1893 (28 Stat. 7, c. 14), and that thereupon he became subject to deportation. The defendant's contention is that

such laundry work as he performed was infrequent, and merely to help out some Chinese friends conducting such laundry, and who at that time were too ill to carry on such work. On this question I am constrained to hold that said laundry work was done by the defendant on his own account.

[2] Is he for that reason subject to deportation? By the treaty between China and the United States, dated November 17, 1880 (22 Stat. 826), it is agreed that:

"Whenever in the opinion of the government of the United States, the coming of Chinese laborers to the United States, or their residence therein, affects or threatens to affect the interests of that country, or to endanger the good order of the said country, or of any locality within the territory thereof, the government of China agrees that the government of the United States may regulate, limit, or suspend such coming or residence, but may not absolutely prohibit it. The limitation or suspension shall be reasonable and shall apply only to Chinese who may go to the United States as laborers, other classes not being included in the limitations. Legislation taken in regard to Chinese laborers will be of such a character only as is necessary to enforce the regulation, limitation, or suspension of immigration, and immigrants shall not be subject to personal maltreatment or abuse." Article 1.

And:

"Chinese subjects, whether proceeding to the United States as teachers, students, merchants or from curiosity, together with their body and household servants, and Chinese laborers who are now in the United States shall be allowed to go and come of their own free will and accord, and shall be accorded all the rights, privileges, immunities, and exemptions which are accorded to the citizens and subjects of the most favored nation." Article 2.

This treaty, which is a part of the supreme law of the land (Const. art. 6, cl. 2), it is noted, has for its purpose the protecting of the interests and good order of this country, when affected by "the coming of Chinese laborers to the United States or their residence therein," and authorizes our government to "regulate, limit or suspend such coming or residence," but not to "absolutely prohibit it." By express reference this power of limitation or suspension is to be reasonable, and is made applicable only "to Chinese who may go to the United States as laborers," and the legislation to such end is to be only such as is necessary "to enforce the regulation, limitation, or suspension of immigration." It is to be noted, further, that Chinese subjects of the exempt class (merchants, etc.), when admitted to this country, are to "be accorded all the rights, privileges, immunities and exemptions which are accorded to the citizens and subjects of the most favored nation."

Under this treaty, a Chinese subject of the exempt class, regularly admitted to this country, must be held to have obtained a status the same as is obtained by an immigrant from the most favored nation. This being so, it follows that such status continues with him, so far as his right to remain in this country is concerned, notwithstanding that he may subsequently to his admission, whether through choice or necessity, become a laborer. This conclusion accords with that reached by Judge Lowell in Re Yew Bing Hi (D. C.) 128 Fed. 319, the facts of which are substantially those in the instant case. His analysis and interpretation of the legislative purposes of the Chinese Exclusion Acts are persuasive, and when such enactments are put to the additional

test of squaring with the limitation placed by said treaty upon the power to exclude or remove Chinese subjects from the United States, the conclusions reached by that learned judge, to my mind, are irresistible.

The case of Cheung Him Nin v. U. S., 133 Fed. 391, 66 C. C. A. 453, is cited as an authority for an opposite view. That case, however, discloses no more than the proceedings before the commissioner, the affirmance of his order of deportation by the District Court, and the concurrence by the Circuit Court of Appeals in his finding that the defendant was a laborer. The testimony of the defendant in that case suggested a fraudulent use of a merchant's certificate in entering this country, and a finding that he was a laborer on that basis would not be without rational support, and in the absence of anything in the opinion indicating a different ground, none other will be assumed. So considered, that case is not opposed to the view here taken.

In U. S. v. Foo Duck, 172 Fed. 856, 97 C. C. A. 204, the same court held that a Chinese subject who lawfully entered this country was not subject to deportation, though he subsequently worked as a laborer. See, also, to the same effect, U. S. v. Lim Yuen (D. C.) 211 Fed. 1001, and Ex parte Wong Yee Toon (D. C.) 227 Fed. 247, and cases cited.

In my opinion, the defendant is entitled to remain in this country, and the commissioner's order directing his deportation is therefore set aside.