# LIU HOP FONG *v.* UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE · DISTRICT OF NEBRASKA.

No. 181.    Argued March 18, 1908.—Decided April 20, 1908.

Under the provisions of § 13 of the act of September 13, 1888, c. 1015, 25 Stat. 476 and § 3 of the act of May 15, 1890, c. 60, 27 Stat. 25, the appeal given to a Chinaman from an order of deportation made by a commissioner is a trial *de novo* before the district judge to which he is entitled before he can be ordered to be deported, and the order cannot be made on a transcript of proceedings before the commissioner. ·

After a commissioner has made and filed a certified transcript in the case of a Chinaman ordered by him to be deported his authority over the matter ends. There is no statutory right to make up and file additional findings.

While a certificate issued as provided by § 3 of the Treaty of December, 1894 between the United States and China to entitle Chinese subjects to enter the United States may be overcome by proper evidence, and may not have the effect of a judicial determination, when a Chinaman has been admitted to the United States on a certificate made in conformity with the treaty, he cannot be deported for having fraudulently entered the United States unless there is competent evidence to overcome the legal effect of the certificate.

THE facts are stated in the opinion.

*Mr. Frank L. McCoy,* with whom *Mr. John L. Webster* and *Mr. Robert H. Olmsted* were on the brief, for plaintiff in error:

The complaint is insufficient in substance to sustain the conviction or order of deportation, in that it does not allege facts showing fraud in defendant's coming to the United States.

In fact the issuance to plaintiff in error of his student's certificate and his subsequent admission thereunder into this country, by the officers of the government, operated as an adjudication of the *bona fides* and lawfulness of his coming. That decision, unappealed from, is *res judicata* and entitles the defendant to remain here, at least until such determination is overcome by strong competent evidence. And his changing his occupation from student to laborer, or anything else, after coming here, would not constitute such overcoming evidence or defeat his right to remain here. His right to remain depends altogether on his "coming," whether that was lawful, whether *bona fide* or *mala fide*, whether he was in fact a student and one of the student or teacher class in China, or a laborer there intending to be a laborer here. *United States* v. *Sing Lee,* 71 Fed. Rep. 680; *Re Chin Ark Ning,* 115 Fed. Rep. 412; *Re Yew Fing Hi,* 128 Fed. Rep. 319; *Louie Gwen* v. *United States,* 128 Fed. Rep. 522; *United States* v. *Leo Won Fong,* 132 Fed. Rep. 190, 195; *United States* v. *Joe Dick,* 134 Fed. Rep. 988, 989; *United States* v. *Seid Bow,* 139 Fed. Rep. 56; *Tom Hong* v. *United States,* 193 U. S. 517.

There was not sufficient evidence before the District Court to warrant or support the finding that plaintiff in error was not one of the student or teacher class in China, or that he came into the United States *mala fide* and fraudulently, or to sustain the order of deportation.

There is no support in the evidence for the judge's findings, except perhaps in the commissioner's additional and separate findings of December 30. And such additional findings were not competent evidence, or indeed any evidence.

There was evidence before the court in plaintiff in error's favor, which created a presumption of the rightfulness of plaintiff in error's presence here at all times, which presumption was just as conclusive as an adjudication, unless it was overthrown by positive, direct and competent evidence of fraud to the contrary. And this conclusive evidence in plaintiff in error's favor was the certificate, with all its indorsements, under which he was admitted into the United States.. There was no competent evidence to overthrow it or even in contradiction thereof, the findings of December 30 being merely gratuitous, without authority or sanction in law; and the rightfulness or lawfulness of plaintiff in error's coming, entry and continued residence here is therefore undisputed in the evidence. *United States* v. *Sing Tuck,* 194 U. S. 161; *United States* v. *Ju Toy,* 198 U. S. 253; *Andrews* v. *Eastern Oregon Land Co.,* 203 U. S. 127.

The burden of proof in a case of this nature is on the Government. *Moy Suey* v. *United States,* 147 Fed. Rep. 697.

This court will review the evidence and find for itself the facts, particularly in view of the fact that the district judge and commissioner misconstrued the treaty and laws and their findings of fact were made what they are only because of their misconceived idea of the true intent and meaning of said treaty and laws. *Tom Hong* v. *United States,* 193 U. S. 517; *United States* v. *Seid Bow,* 139 Fed. Rep. 56; *Moy Suey* v. *United States,* 147 Fed. Rep. 697.

*Mr. Assistant Attorney General Cooley* for defendant in error:

The procedure followed was regular, and satisfied the requirements of the law. The complaint should not be tested by the technical rules of pleading in criminal cases. *Fong Yue Ting* v. *United States,* 149 U. S. 698, 728; *Chin Bak Kan* v. *United States,* 186 U. S. 193, 199; *Ah How* v. *United States,* 193 U. S. 65, 77.

The policy of the law in regard to a deportation proceeding

seems merely to require a fair, though summary hearing. *Chin Yow* v. *United States*, 208 U. S. 8. The court was justified in affirming the decision solely upon the commissioner's report of the evidence. *Ah How* v. *United States*, 193 U. S. 78.

A student's certificate is only *prima facie* evidence of the right of the Chinaman to remain in the United States, and its effect may be overcome by other evidence in the case. Such evidence was furnished by the Government officers in this case, and the order of deportation was rightfully entered. *United States* v. *Yong Yew*, 83 Fed. Rep. 832; *United States* v. *Ng Park Tan*, 86 Fed. Rep. 605.

MR. JUSTICE DAY delivered the opinion of the court.

The plaintiff in error, Liu Hop Fong, on November 23, 1904, was arrested upon the sworn complaint of the United States district attorney and brought before a United States commissioner at Omaha, Nebraska, charged with being unlawfully within the United States of America, living and residing at Omaha, Nebraska, and there pursuing the occupation of a common laborer, contrary to the laws of the United States. The complaint prayed that he might be arrested and dealt with according to law. Upon a plea of not guilty, on December 29, 1904, a hearing was had before the commissioner. The bill of exceptions shows that the commissioner on December 29, 1904, made an order finding the defendant guilty, and ordered his deportation from the United States to the Empire of China; that an appeal was taken to the District Court of the United States for the District of Nebraska; that the case was heard upon the thirteenth day of April, 1905, being one of the days of the November term of the District Court; that the case was tried and submitted to the judge without any new evidence upon the complaint, upon the transcript of the proceedings made by the United States commissioner from whose order the case was appealed, and the additional sep-

arate findings made by the commissioner and the original student's certificate of the defendant and the translation thereof, with all indorsements and certificates thereon under which the defendant was admitted into and entered the United States. The commissioner's transcript shows:

On November 23, 1904, the defendant was brought before the commissioner, entered a plea of not guilty, and the hearing was continued to December 29, 1904, when witnesses were examined for the United States and for the defendant. Their names are given, but their testimony is not set out. On the same day (December 29, 1904) defendant was adjudged guilty and ordered to be deported, and on that day defendant appealed to the District Court and gave bond for his appearance in that court. This transcript was duly certified and indorsed, filed January 9, 1905, by "R. C. Hoyt, Clerk," and the commissioner filed additional and separate findings bearing date December 30, 1904, as follows:

"That the said Liu Hop is a Chinese manual laborer, and was born in and is a subject to the (Emperor) of China; that he was found within the limits of the United States, to wit, in the city of Omaha, Douglas County, State of Nebraska, in the District of Nebraska, on the 23d day of November, A. D. 1904, and that when he was so found as aforesaid, the said Liu Hop was in possession of a certain certificate, proper in form, No. 179, registered in book three, folio 164, issued by the Colonial Secretary of Macau Province, by authority of H. E. Governor of said province, and dated the 17th day of May, 1899, which said certificate, among other things, recites as follows:

" 'By order of H. E. the Governor, I grant this passport to a Chinaman Liu Hop, bachelor, natural, and residing in Macua, student of Chinese literature for over 4 years, being his professor Lu-ioc-po, living in Rua dos Mercadores, No. 180, to go to the United States of America, in order to study there the English language and European sciences, and to live in the company of his brother Eiu-eng-Fun, manager of the firm

"Lun-Sing-Chong"—Rockspring, Wyo.—San Francisco, California.'

"That I find from the evidence adduced upon the hearing herein that the said Liu Hop landed in the city of San Francisco on or about July 3, 1899, and shortly thereafter and during said year of 1899 came to the city of Omaha, State and district of Nebraska, where he has ever since resided and still resides.

"I further find that during the time of his residence in said city he has at all times been a common laborer, and has at no time pursued the study of the English language beyond the merest rudiments taught by his Sunday school teacher, and has at no time pursued the study of European sciences or any other study except as to the rudiments of the English language; and that the said Liu Hop has at no time been a student within the meaning of the act of Congress approved May 5, 1892, and acts of Congress amendatory thereof, and that he is now unlawfully within the United States of America.

"To all of which foregoing order and findings of the United States commissioner, the said Liu Hop excepts and prays an appeal, and bail is fixed in the sum of $500.00; his certificate pending an appeal to remain in the custody of the said United States commissioner."

These findings are endorsed as follows: "Filed Jan. 9, 1905. R. C. Hoyt, Clerk."

The certificate upon which the plaintiff in error was admitted to this country is as follows:


" (*Endorsements—Translation.*)

"Government of Macau Province.

"Colonial Secretary                        No. 179.
        of Macau Province.    Registered in Book 3, folio 164.
"Maria Pires Nonteiro Bandeira de Lima, Colonial Secretary of
    Macau Province, His Majesty the King, &c., &c.

"By order of H. E. the Governor, I grant this passport to a Chinaman Liu-Hop, bachelor, natural and resident in Macau, student of Chinese literature for over 4 years being his professor Liu-ioc-po, living in Rua dos Mercadores, No. 180, to go to the United States of America, in order to study there the English language and European sciences, and to live in the company of his brother Liu-eng-Fun, manager of the firm 'Lun-Sin-Chong'—

Signals:
Age. . . . . . . 20 years.
Height . . . . 1 m. 590 ms.
Face. . . . . . Long.
Hair . . . . . . Black.
Eyebrows. . . do.
Eyes. . . . . . Dark chestnut.
Nose. . . . . . Flat.
Mouth . . . . Big.
Color of the Asiatic Race.
Cost of passport, $3.50.

"Rockspring, Wyo.—San Francisco—Cal.

"Guaranteed.

"Fulfilling the obligation to have this passport viséd by the respective diplomatic or consular agent residing in this city, I beg to request the administrative authorities, and all those to whom it may concern, not to put any objection to the bearer.

"Valuable for 30 days to leave this city.

"Given at Macau on the 17th day of May 1899.

"By authority of H. E. the Governor.

"The Colonial Secretary,
"MARIO B. DE LIMA.

(Signed)
"Bearer's signature
(S'd)  LIU HOP.
"Translated by A. M. Roza Peruia, Jr.
"Visé U. S. Consulate General Hongkong, May 31, 1899.
"R. WILDMAN, *Consul Gen.*"

The bill of exceptions further shows that the evidence taken before the commissioner was not reduced to writing or preserved, or in any manner taken to the District Court, and no further or other evidence was submitted by either of the parties. After argument of counsel the judge filed an opinion and

ordered the defendant to be deported, to which the defendant excepted.

The opinion of the learned District Judge, a copy of which is given in the record, shows that the order of deportation was made because in his opinion the facts as found by the commissioner indicate that Liu Hop Fong did not come to the United States to study the English language and the English sciences as a student, and that such contention was a mere device to gain entrance into this country, and not in good faith to pursue studies as a student, and his real intent was to labor only; "and I am of the opinion," says the learned judge, "that his entry under the certificate mentioned was a fraud upon the United States, and such certificate does not afford him protection." He thereupon affirmed the finding and judgment of the commissioner. Subsequently, and after the adjournment of the term at which this order was made, a petition was filed for a new trial upon the record and affidavits submitted on behalf of Liu Hop Fong, and while the judge recognized that he had no further power over the proceedings after the adjournment of the court for the term, upon investigation adhered to his former opinion as to the order of deportation.

We need not be concerned with these proceedings after the term, for clearly the judge's authority over the case had ended. The question is here upon the record made in the original proceeding before him. Was the judge warranted in making the order of deportation? By the third section of the treaty with China of December 8, 1894 (28 Stat. 1210), it is provided:

"The provisions of this convention shall not affect the right at present enjoyed of Chinese subjects, being officials, teachers, students, merchants or travelers for curiosity or pleasure, but not laborers, of coming to the United States and residing therein. To entitle such Chinese subjects as are above described to admission into the United States, they may produce a certificate from their government or the government where they last resided, viséd by the diplomatic or consular

representative of the · United· States in the country or port whence they depart."

By § ·13 of the act of 1888 (25 Stat. 476), it is provided:

"That any Chinese person, or person of Chinese descent, found unlawfully in the United States, or its territories, may be arrested upon a warrant issued upon a complaint, under oath, filed by any party on behalf of the United States, ·by any justice, judge or commissioner of any United States· court, returnable before any justice, judge or commissioner of a United States court, or before any United States court, and when convicted, upon a hearing, and found and adjudged to be one not lawfully entitled ·to be or remain in the United States, such person shall be removed from the United States to the country whence he came."

By § 3 of the act of May 5, 1892 (27 Stat. 25), it is provided:

"That any Chinese person or person of Chinese descent arrested under the provisions of this act or the acts hereby extended shall be adjudged to be unlawfully within the United States, unless such person shall establish, by affirmative proof, to the satisfaction of such justice, judge or commissioner, his lawful right to remain in the United States."

Section 13 of the act of 1888 (25 Stat. 476) also provides that any Chinese person convicted before the commissioner of the United States court may within ten days of such conviction appeal to the judge of the District Court for the district.

In this case the Chinaman did prosecute his appeal from the commissioner to the District Judge. The statute is curiously silent as to how the appeal is to be heard; it says nothing as to what papers are to be filed or as to what testimony shall be given. In our view, in giving the Chinaman an appeal, the law contemplates that he shall be given the right of a hearing _de novo_ before the district · judge before he is ordered to be deported. It is a serious thing to arrest a Chinaman, who, as in this case, has been in this country a number of years, lawfully admitted upon a certificate complying with the treaty, and order his deportation without giving him a full oppor-

tunity to assert his rights before a competent court.  There
being no provision of the statute that the hearing shall be upon
a transcript of the proceedings before the commissioner, we
think when a party demands it Congress intends he shall
have the right to a hearing and judicial determination before
the District Judge.

In the case of *Ah How* v. *United States*, 193 U. S. 65, it was
assumed that the judge who tried the case upon appeal did so
solely upon the commissioner's report, and heard no witnesses.
In *Tom Hong* v. *United States*, 193 U. S. 517, the commissioner
made a finding, which was made part of the record by order
of the District Court. In the present case the record shows
that there was before the District Court the transcript of the
proceedings hereinbefore set out as having taken place before .
the commissioner on December 29, 1904; and then, without
the order of the court, an additional and separate finding of
the commissioner appears to have been filed.  We are not
aware of any statute that gives the commissioner a right to
make up and file such additional finding; he had made and filed
a certified transcript in the case, and there ended his authority
in the matter.  There was no order, as in the *Tom Hong case*,
making the commissioner's findings part of the record.  There
was no consent to a hearing of the case upon such additional
findings, and the case presented to the District Judge embraced
the student's certificate hereinbefore referred to, and a state-
ment that witnesses were examined without any findings of .
facts or the giving of any testimony.  On this state of the
record we are of the opinion that the court had no authority
to order the deportation of the Chinaman.

The treaty with China provides that officials, teachers,
students, etc., shall have the privilege of coming to and re-
siding in the United States (Article 3, Treaty of December,
1894, above referred to), and further provides:

"To entitle such Chinese subjects as are above described
to admission into the United States, they may produce a cer-
tificate from their government or the government where they

last resided, viséd by the diplomatic or consular representative of the United States in the country or port whence they depart."

When this young man entered a port of the United States in July, 1899, he presented such a certificate, duly issued and viséd by the consular representative of the United States. Upon application for admission this certificate is *prima facie* evidence of the facts set forth therein.  22 Stat. 58, § 6; 33 Stat. 428.  This certificate is the method which the two countries contracted in the treaty should establish a right of admission of students and others of the excepted class into the United States, and certainly it ought to be entitled to some weight in determining the rights of the one thus admitted. While this certificate may be overcome by proper evidence and may not have the effect of a judicial determination, yet being made in conformity to the treaty, and upon it the Chinaman having been duly admitted to a residence in this country, he cannot be deported, as in this case, because of wrongfully entering the United States upon a fraudulent certificate, unless there is some competent evidence to overcome the legal effect of the certificate.  In this record we can find no competent testimony which would overcome such legal effect of the certificate, and the plaintiff in error was therefore wrongfully ordered to be deported.

> *The judgment of the District Court is reversed, and the cause remanded to that court with directions to discharge the plaintiff in error from custody without prejudice to further proceedings.*