### UNITED STATES v. WONG OCK HONG.

#### (District Court, D. Oregon. May 2, 1910.)

#### No. 5,234.

1. ALIENS (§ 32*)—DEPORTATION PROCEEDINGS—APPEAL—CERTIFICATION OF JUDGMENT.

Failure of the commissioner in Chinese deportation proceedings to certify the judgment to the District Court on appeal is not a jurisdictional defect; the court being authorized to direct certification and require transmission of the judgment.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 32.*]

2. ALIENS (§ 32*)—DEPORTATION PROCEEDINGS—APPEAL—NOTICE.

Where a notice of appeal in Chinese deportation proceedings, though entitled in the District Court, was nevertheless left with the commissioner and transmitted with the papers in the case, the fact that the notice was entitled in the District Court, and not before the commissioner, was not a jurisdictional defect.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 32.*]

3. ALIENS (§ 32*)—DEPORTATION PROCEEDINGS—APPEAL—TRIAL DE NOVO.

A Chinaman's appeal from a commissioner's order of deportation is triable de novo before the District Judge, and not on the record made before the commissioner.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 32.*]

4. ALIENS (§ 32*)—CHINESE—DEPORTATION—CITIZENSHIP—EVIDENCE.

In Chinese deportation proceedings, evidence *held* to establish defendant's right to remain in the country.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 32.*

Citizenship of the Chinese, see notes to Gee Fook Sing v. United States, 1 C. C. A. 212; Lee Sing Far v. United States, 35 C. C. A. 332.]

Deportation proceedings by the United States against Wong Ock Hong. From a judgment directing deportation, defendant appeals. Reversed, and defendant discharged. .

Walter H. Evans, Asst. U. S. Atty.

L. H. Tarpley, for defendant.

WOLVERTON, District Judge. This is an appeal from the judgment of the commissioner directing a deportation of the defendant, being a Chinaman, as not entitled to remain in this country. Three questions are presented before coming to the merits of the case:

First. It is urged that this court is without jurisdiction, because the commissioner has not certified his judgment here. That, however, is not a jurisdictional matter, for this court may yet direct a certification of such judgment, and require its transmission here.

The next contention is that this court is without jurisdiction, because the notice of appeal is entitled in this court, and not before the commissioner. From the certificate of the commissioner transmitting the papers in the case to this court, the notice of appeal appears to be among them. It may be inferred, therefore, that, while the notice was entitled in this court, nevertheless it was left with the commissioner, or he would not have transmitted it here among the papers. The commissioner is also the clerk of the District Court. The appeal is intended as a summary procedure, and it might thwart the purposes of the statute if the parties were held to strict technical rules. It seems to me that the notice was sufficient, under the circumstances, although filed in this court, to bring the matter of appeal to the attention of the United States district attorney, and it was, hence, sufficient to confer jurisdiction.

It is next urged that the trial in this court should be had upon the record as made before the commissioner, and not de novo. This question, however, has been put at rest by a recent case in the Supreme Court of the United States, where it is held that:

"The appeal given to a Chinaman from an order of deportation made by a commissioner is a trial de novo before the district judge to which he is entitled before he can be ordered to be deported, and the order cannot be made on a transcript of proceedings before the commissioner." Liu Hop Fong v. United States, 209 U. S. 453, 28 Sup. Ct. 576, 52 L. Ed. 888.

This brings me to a consideration of the merits of the case. It appears from the testimony of the defendant that he was born in South Fork, Cal.; that he resided there with his father until he was 12 years old; that when of that age his father moved to San Francisco, and, being desirous of returning to China, applied for and obtained a certificate for the defendant, entitling him to remain in this country. This certificate, which was given to the defendant, he has held, according to his own testimony, in his possession ever since. The certificate, being numbered 132,997, is presented in court, and bears date May 3, 1894. It also contains a photograph pasted thereon. The defendant further testifies that in November last he came to Portland, and after remaining here a few days went to Seattle. A couple of months later he returned to Portland, where he was arrested, and his right to re-

main in this country questioned. The defendant is corroborated in part in his narrative by the testimony of two Chinamen, who say they knew the father in San Francisco, and of the circumstance of his leaving the son on his departure for China. One of them affirms that he has seen the boy on one or two occasions since. The other one, however, does not remember to have seen him. Both of them recognize the defendant as the boy whom they saw in San Francisco. It was further shown, by other witnesses, that he was seen here in Portland in November, and was then on his way to Seattle, and that he was also seen in Seattle prior to his return to Portland.

The government contends that the defendant is not the same Chinaman as named in the certificate which he produces, and for this contention there is some evidence. It seems that the government inspectors at Point Roberts, Wash., saw there a certificate, presented by a Chinaman, bearing the same number as this one here, and so certified the fact to the inspector at Blaine, Wash. Shortly afterwards a Chinaman passed through Blaine, Wash., with a certificate of the same number, which was checked up at that place. It was shown, further, that the height of that Chinaman was 5 feet 7 inches, while the height of the defendant is 5 feet 4 inches; so that the Chinaman there presenting himself could not have been the same person as the defendant here. Mr. Barbour, who is the government inspector here, upon a careful examination of the appearance of the defendant, is of the opinion that he is not the same person whose photograph is exhibited upon the certificate. His judgment is based almost exclusively upon the type of the ears. Upon the other hand, however, Mr. Connell, who has had some experience in the service, is rather of the opinion that the persons are the same. Such is the case of the government standing against the case presented by the Chinaman.

It is a rule of law that:

"A Chinese person, who is charged with being unlawfully within the United States shall establish, by affirmative proof, to the satisfaction of the justice, judge, or commissioner, his lawful right to remain." United States v. Chin Sing (D. C.) 153 Fed. 590.

Thus is cast upon a Chinese person the burden of proving his right to remain here. In the present case, however, the defendant at least shows a strong prima facie case, when he presents a certificate showing his right to be in this country and testifies that he is the person named in the certificate, with corroboration by other Chinamen as to his identity. Unless this case is overcome by the government, it logically follows that he should not be deported. It is very clear to my mind that the defendant was never at Point Roberts or Blaine, Wash., because the time when a person having a certificate with the same number as this was in Blaine was a couple of months prior to the time when defendant left San Francisco; that being in September, and the defendant leaving San Francisco in November. So that, unless he went from San Francisco up there and returned, he could not well have been in Blaine in September. It is a suspicious circumstance that a certificate of the same number should have passed through the Blaine office; but, if the defendant loaned his certificate for use by another Chinaman,

that would be a different offense from the one here charged, and would not be cause for his deportation.

It is urged that defendant's story is incredible, from the fact that he does not talk English understandingly, as he should if reared in this country. He does speak some English, but would not trust himself to testify without the aid of an interpreter. He can count, and writes his name in fairly good form, but repeats the English alphabet with indifference. He was reared in a country town until the age of 12, but further than this his environment is undisclosed. Ordinarily a Chinese boy would learn to speak the English language fairly well in such a place; but defendant may have had little contact with English-speaking people. While residing in San Francisco, it may be assumed that his association was largely with the Chinese colony, and his contact with the American people limited. It might well happen that a Chinaman living in this country from birth would have learned to speak English indifferently. Aside from this imperfection, the story of Wong Ock Hong is persuasive, and the case of Quock Ting v. United States, 140 U. S. 417, 11 Sup. Ct. 733, 851, 35 L. Ed. 501, is not controlling.

I am impressed that the testimony of the defendant, along with the fact that he has the certificate, is sufficiently corroborated, and that he has made the better case. Hence the government must fail in its prosecution.

The judgment will be that the defendant be released.