MOY KONG CHIU v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. October 2, 1917.)

No. 2425.

1. ALIENS ⬅️28—IMMIGRATION—CERTIFICATE.
    A certificate of identity, issued pursuant to Act May 6, 1882, c. 126, § 6, 22 Stat. 60, as amended by Act July 5, 1884, c. 220, 23 Stat. 116 (Comp. St. 1916, § 4293), to a Chinese person entering the United States as a student, while declared to be prima facie evidence of the right of the person to whom issued to enter the country, may be overcome by competent evidence that it was fraudulently obtained.

2. ALIENS ⬅️28—CHINESE EXCLUSION—IMMIGRATION—CERTIFICATE.
    Evidence that a Chinese person admitted as a student upon a certificate issued pursuant to Act May 6, 1882, § 6, as amended by Act July 5, 1884, immediately upon his arrival engages in and continues in employment as a laborer, justifies the conclusion that the certificate was obtained by fraudulent representations.

3. ALIENS ⬦⟲24—CHINESE EXCLUSION—IMMIGRATION—CERTIFICATE.

Defendant, a Chinese person, was in 1912 admitted into the United States as a student, and the usual certificate of identity was issued to him, pursuant to Act May 6, 1882, § 6, as amended by Act July 5, 1884. Defendant was then about 18 years old. Two years later he was arrested in Chicago while engaged in manual labor in a laundry belonging to his father. It appeared that defendant was out of school during his first year's residence in San Francisco, his port of entry, for about 20 days, and that on his arrival in Chicago he took up his studies at a private school, where he continued until the date of his arrest, although he worked 5 or 6 weeks in his father's laundry. *Held* that, as a Chinese person who lawfully enters the United States as a student may not be deported because he temporarily engages in manual labor while attending school, defendant could not be deported on the ground that he had procured a certificate through fraud, notwithstanding a letter, written by his father, stating that he did not have him come to this country to attend school, but to make money; such letter not showing defendant's abandonment of his avowed purpose.

4. ALIENS ⬦⟲28—CHINESE PERSONS—DEPORTATION CERTIFICATE.

A certificate issued to a Chinese person, pursuant to Act May 6, 1882, § 6, as amended by Act July 5, 1884, who was admitted as a student, cannot be annulled on mere suspicion or conjecture that the Chinese person fraudulently procured it, but the government has the burden of proving that fact.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Deportation proceeding by the United States against Moy Kong Chiu, begun before a commissioner. From an order of deportation, entered by the commissioner, defendant appealed to the District Court, and from a judgment on trial de novo, directing deportation, defendant appeals. Reversed.

This is an appeal from an order of deportation. The appellant, a Chinese person, arrived at the port of San Francisco in June, 1912, then about 18 years of age. Having satisfied the immigration authorities that he was of the exempt classes, namely, a student, he was duly admitted and the usual certificate of identity issued to him. In January, 1914, he was arrested in Chicago by an immigrant inspector, while engaged in manual labor in a laundry. A trial before a commissioner resulted in a finding that appellant was unlawfully in the United States, and an order of deportation. An appeal was taken to the District Court, where a trial de novo was had, on April 16, 1916.

To sustain the charge that appellant was unlawfully in this country, the government introduced evidence to the effect that after attending school in San Francisco for 4 or 5 months after his arrival, appellant was arrested, after he had been out of school about 3 weeks, on a charge of being a laborer; that he was discharged without trial upon promise being made that deportation would not be resisted if he was again found away from school and engaged in labor; that about 5 or 6 months later, in the summer of 1913, he came to Chicago, where, in January, 1914, he was arrested, while engaged in manual labor in the laundry of his father, Nie Pang; that he continued to work in the laundry for a month after his arrest; that at the time of his arrest he stated to the immigration authorities that his father was still in China and sent appellant such funds as he needed; that prior to making such sworn statement he told the inspector that he was born in San Francisco, and disowned the certificate of identity found in his possession. The government also introduced in evidence two letters, written by Nie Pang, at Chicago, which were received by appellant at San Francisco, shortly before he came to Chicago,

and were found in his possession at the time of his arrest. They read as follows:

"Yesterday I received your letter and noted what you say about coming to the city and that you have to have some one sign for you to go to school. I have consulted with Jung Quon and it cannot be done. The guarantor had stated to me recently that after two or three months in school one can come out and work independently and now they want some one to guarantee you come here to attend school. I have not even a dollar on hand; it is difficult for me to do. All the brothers knows that I cannot borrow even one dollar from any one. I always have some sickness. Although I have a mouth it is difficult for me to speak. If you consult with Yu Mun uncle and Wing as to what way so you can come out to work independently then write and inform me and have him write a letter in English guaranteeing that you come here to attend school. I did not [have you] come here to attend school but come to make money. If you come here without any paper or evidence you cannot be independent for the inspector will put his hand on you and look into the matter and it will make things difficult. The guarantor at Hong Kong will get back the money. Be sure to have things fixed in a safe way, get your certificate of identity. Jung Hoy and Jung Quon cannot do anything. From the time of Qwong Chiu's arrival I have not been in the state of tranquillity or happy even one day. I have been worrying about things every moment."

"I will state that I received your letter and noted what you stated in the letter about coming to the city and that you have to sign up before you can come to the city and that you have to attend school. It is not the fact that you come to attend school. You are to come to work and make money. Up to the present date the guarantor order you to get bond to go to school. I have consulted with Jung Quon but it cannot be done. If it is settled get a certificate for evidence before you come to the city and if you cannot do any work it will be extremely difficult. I beg a thousand times that you consult with Mun Goong Wing uncle and do whatever he think the best. If Kwong Chon comes to the city be sure write to Yu Ngin uncle have him send you the railroad fare. I have already spoken to him about it and it can be done. If there is any hindrance after you come there the guaranteed money will have to be obtained at Hong Kong. I beg a thousand times that you have the matter settled safely before you come."

At the conclusion of the evidence the District Court affirmed the order of deportation and remanded appellant to the custody of the marshal. Upon this judgment error is assigned, and also because of the admission and exclusion of evidence.

John Elliott Byrne, of Chicago, Ill., for appellant.

Charles F. Clyne and Benjamin P. Epstein, both of Chicago, Ill., for the United States.

Before BAKER, KOHLSAAT, and EVANS, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). [1] Appellant was admitted to the United States upon a certificate issued to him in accordance with section 6 of the act of May 6, 1882 (22 Stat. 60), as amended by Act July 5, 1884 (23 Stat. 117), and by virtue of the provision of article 2 of the treaty between the United States and China concerning immigration, dated November 17, 1880 (22 Stat. 827), and article 3 of the convention of December 8, 1894 (28 Stat. 1211). Said section 6 as amended provides that the certificates issued thereunder shall be prima facie evidence of the right of the persons to whom issued to enter this country, and also provides that such certificates may be controverted and the facts therein stated disproved by the United States authorities. The prima facie character of such a certificate may be overcome by competent evidence that it was fraudulently obtained.

Liu Hop Fong v. United States, 209 U. S. 453, 28 Sup. Ct. 576, 52 L. Ed. 888.

[2-4] Appellant's certificate, being in conformity with the statute, was presumptively valid, and constituted prima facie evidence of his right to be here. Whether, therefore, it should be annulled, and he be deported, depends upon whether the evidence warrants the finding that he obtained his certificate by fraud or deception, intending to evade the exclusion laws and become a laborer.

Evidence that a person, admitted upon a certificate issued under said section 6, immediately after his arrival engages in and continues in employment as a laborer, justifies the conclusion that the certificate, though correct in form and substance, was obtained by fraudulent representations. United States v. Yong Yew (D. C.) 83 Fed. 832; United States v. Ng Park Tan (D. C.) 86 Fed. 605; United States v. Foo Duck, 172 Fed. 856, 97 C. C. A. 204; Chain Chio Fong v. United States, 133 Fed. 154, 66 C. C. A. 220; Cheung Him Nin v. United States, 133 Fed. 391, 66 C. C. A. 453; Ong Seen v. Burnett, 232 Fed. 850, 147 C. C. A. 44; Lo Pong v. Dunn, 235 Fed. 510, 149 C. C. A. 56; Lui Hip Chin v. Plummer, 238 Fed. 763, 151 C. C. A. 613. On the other hand, it is well settled that a Chinese person, who lawfully enters this country as a student, may not be deported because he temporarily engages in manual labor while attending school. See In re Tam Chung (D. C.) 223 Fed. 801, and cases cited at page 803.

The evidence produced by the government shows that appellant worked during a period of about 5 weeks. At the time of his arrest he stated that he had been employed in the laundry about a week, and a government witness testified that he had seen him working in the same laundry on several occasions during the month following his arrest. The record shows that he was out of school during his first year's residence, at San Francisco, about 20 days, but not that he engaged in manual labor there. Upon his coming to Chicago he immediately took up his studies at a private school, where he continued to the date of his arrest. There is no evidence that he ever ceased going to school after he came to Chicago. At the time of his trial he had been in the United States nearly 4 years. There was no proof that he worked in the laundry until some 6 months after his arrival in Chicago, or that he worked more than 4 or 5 weeks in all. His employment was not inconsistent with the claim that he came to attend school. Under the circumstances, the statements contained in the vague and unintelligible letters of Nie Pang to the effect that he was not to come to Chicago to attend school, or, as one sentence is translated, "I did not [have you] come here to attend school but come to make money," cannot be held to establish that appellant came to the United States with the unlawful intent of becoming a laborer. The evidence does not show that he in fact abandoned the avowed purpose for which he came. The inference drawn from these letters, in the government's brief, that Nie Pang fraudulently procured the issuance of appellant's certificate, is based on conjecture, rather than on any clear evidence. Fraud in procuring the same cannot, on the facts stated, be imputed to appellant. It was incumbent upon the government to overcome the legal effect of appel-

lant's certificate by evidence and not by presumption. It ought not to be annulled on suspicion and conjecture. See Lui Hip Chin v. Plummer, 238 Fed. 763, 151 C. C. A. 613; Wong Yee Toon v. Stump, 233 Fed. 194, 147 C. C. A. 200. In the latter case it is said:

"After the certificate is issued, it is our view that the burden is cast upon the government, in case a proceeding is instituted to attack it, to show by testimony which the law recognizes as evidence that it should be annulled before an order for deportation is warranted. * * * It is the privilege of the immigration authorities to prove, if they can, that the certificate is invalid, and that its issue was procured by fraud; but they are not permitted to treat it as a nullity upon mere suspicion and conjecture."

Notwithstanding appellant's false and inconsistent testimony, we fail to find evidence justifying the government's contention that he obtained his admission through fraud.

The judgment of the District Court is reversed.