## LO HOP v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. February 4, 1919.)

No. 3124

1. APPEAL AND ERROR ⬅⬚11—REVIEW—DISMISSAL.
   Under Act Sept. 6, 1916, § 4 (Comp. St. § 1649a), though it was apparently the purpose to have the decree considered on both appeal and error, and the record was somewhat confused, the court will treat the case as properly before it on appeal.

2. ALIENS ⬅⬚32(5)—CHINESE PERSONS—BURDEN OF PROOF.
   One admitting that he was of Chinese descent has the burden of establishing a lawful right to remain in the United States.

3. ALIENS ⬅⬚23(2)—CHINESE PERSONS—CHANGE OF OCCUPATION.
   Where a Chinese person has been regularly admitted as a merchant, the fact that he subsequently becomes a laborer does not in itself destroy his right to remain, for such a fact is important only as it may tend to show that in reality he entered as a laborer, or for the purpose of immediately becoming a laborer, and so procured his admission through fraud, in violation of the Exclusion Acts.

4. ALIENS ⬅⬚32(3)—CHINESE PERSONS—CERTIFICATES.
   Under the treaty with China of December 8, 1894, and Act April 27, 1904 (Comp. St. § 4337), authorizing the issuing of certificates by Chinese authorities showing the mercantile status of Chinese persons desiring to enter the United States, and making such certificates prima facie evidence of the facts set forth, a Chinese person, who was admitted on the production of such a certificate, and whose deportation was thereafter sought on the ground that he had not shown his right to remain, must be advised if deportation is sought on the ground that his entry was fraudulent, for such certificates are entitled to weight, and Chinese persons should be notified of any attack thereon.

Appeal from the District Court of the United States for the Western Division of the Northern District of Ohio; John M. Killits, Judge.

Deportation proceedings by the United States against Lo Hop. Defendant was ordered deported by the United States commissioner, and on appeal to the District Court the order was affirmed, and defendant appeals. Reversed and remanded for further proceedings.

Mulholland & Hartman and Sholto M. Douglas, all of Toledo, Ohio, for plaintiff in error.

E. S. Wertz, U. S. Atty., of Cleveland, Ohio, and Edward J. Lynch, Asst. U. S. Atty., of Toledo, Ohio.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

⬅⬚For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WARRINGTON, Circuit Judge. [1] Apparently it was the purpose to have the decree in this case considered on both appeal and writ or error, and although the record is somewhat confused we shall, in view of section 4 of the act of September 6, 1916, c. 448, 39 Stat. 727 (Comp. St. § 1649a), treat the case as properly here on appeal. Orders to deport respondent to China were made below (1) by a United States commissioner, and on the ground (stated alike in the affidavit for arrest and the order to deport) that he is "a Chinese person found unlawfully * * * and not lawfully entitled to be or remain in the United States"; (2) by the District Court, upon appeal, for the reason that respondent "at all times since the time of his admission to the United States has been a manual laborer, and has not at any time since his said admission been a Chinese merchant and member of the exempt classes of Chinese persons within the meaning of the Chinese Exclusion Acts."

[2] At the opening of the trial in the District Court respondent admitted that he was of Chinese descent, and, presumably relying upon the settled rule imposing the burden of proof upon respondent to show a lawful right to remain in this country (Bak Kun v. United States, 195 Fed. 53, 55, 115 C. C. A. 55 [C. C. A. 6]), the government rested. Respondent then introduced evidence tending to show that before leaving for this country he had been engaged in the grocery business in China, and for three years in a drug business as a partner to the extent of $10,000 in Hong Kong, and that he had been regularly admitted to the United States, at the port of San Francisco, Cal., July 19, 1911, as a merchant. He remained in San Francisco more than a month looking for business, and then came to Toledo, Ohio; and he was in that city almost continuously until his arrest, November 21, 1914, and indeed until January, 1915, before he claims to have acquired an interest in any business concern. However, it appears by some of the testimony that meanwhile he tried a number of times, in Toledo, Cleveland, and Detroit, to purchase and engage in a mercantile business, though without success until January, 1915, when he bought a half interest in a Chinese general merchandise business in Toledo, the purchase price being subsequently paid in Hong Kong upon his order.

An authenticated copy of a partnership certificate was placed in evidence, dated January 29, 1915, purporting to have been executed in pursuance of section 8099 of the Ohio General Code, and reciting that respondent and another were "interested as partners in the partnership transacting business under the firm name and style of the Sam Wah Company, with its principal office and place of business" at a named location in Toledo. Despite this, it is to be observed of respondent's claimed purchase that his vendor is shown to have applied in Toledo, February 12, 1915, for a Chinese laborer's return certificate, and stated, among other things, that he then owned a half interest in the Sam Wah Company. This must have been the partnership interest said to have been purchased by respondent in the preceding month of January, and the testimony does not satisfactorily explain the discrepancy. It is conceivable, if indeed the sale transaction itself does not naturally import, that the sale was not to be completed

until the purchase price was paid in Hong Kong, and admittedly this did not occur until after the vendor had secured his return certificate and gone to that place.

Difficulty arises, also, from the course pursued by respondent from the time of his arrival in Toledo, say about September 1, 1911, until August, 1916. In that period he was more or less engaged in cooking in the kitchens of restaurants and a grocery in Toledo. According to his own testimony and that of several Chinese witnesses, this work was done gratuitously; yet it is clear enough that he resorted to cooking to diminish, if not entirely to meet, his living expenses while seeking favorable opportunity to engage in some kind of mercantile business; but it is not shown why he continued this practice, although not so regularly, after his interest in the partnership was actually paid for as claimed. True, such a course might have been consistent alike with the business he claims to have entered upon as a merchant and the observance of reasonable economy; in a word, it would seem that, at a time as late as the trial, convincing evidence should have been available to show that the partnership and the certificate in that behalf were a sham, if in truth they were. Above all, the course pursued by respondent after his admission is not decisive of his right to remain in this country. There are other features of the record that must be regarded as controlling.

Respondent introduced an original certificate of identity, dated July 19, 1911, and bearing the official seal and signature of the immigration official in charge at San Francisco, also setting out respondent's name, age, height, etc., and stating his occupation to be that of a merchant. This instrument purports to have been issued in conformity with a departmental regulation of March 19, 1909, and to have been "granted solely for the identification and protection of said Chinese person so long as his status remains unchanged." The inspector, who examined respondent at the time of his arrival at San Francisco, was not satisfied with certain claims he made, or with his appearance, and recommended that his application for admission be denied. The application was afterwards taken to the law division, San Francisco, where the inspector in charge and another inspector on June 23, 1911, jointly determined, "after carefully considering the case," that the recommendation for denial "be reversed and the applicant be admitted."

Furthermore, it appears that, acting in compliance with the provisions of an act of Congress there alluded to, the viceroy at Canton, who had been designated for such purposes by the government of China, issued a certificate on April 24, 1911, showing that Lo Hop was a member of one of the exempt classes described in such act of Congress, and as such had the permission of the government of China to go to and reside within the United States, after "investigation and verification of the statements contained herein by the lawfully constituted agent of the United States in this country," giving a description of Lo Hop, his former occupation as a merchant from 1902 to 1907, and his connection from 1908 to 1911 with a named firm at a stated place in Hong Kong. This certificate was viséed the following May 25th by the American consul general at Hong Kong after making, as

he says, "a thorough investigation of the statements contained" in the viceroy's certificate, and found "to be in all respects true"; the consul general further pointing out that Lo Hop was connected with a particular firm in Hong Kong which was "capitalized at $40,000 Hong Kong currency, of which his share is $10,000," that the firm "has been established for about three years and handles Chinese medicines" and "is registered in Lo Hop's name," and that Lo Hop's declared purpose in going to the United States was to start "a new concern in the business of medicine," etc., and that he was in possession of a "draft for $1,000 gold."

[3, 4] As Mr. Justice Day pointed out in Liu Hop Fong v. United States, 209 U. S. 453, 462, 463, 28 Sup. Ct. 576, 52 L. Ed. 888, article 3 of the treaty with China of December 8, 1894 (28 Stat. 1211), and the Act of Congress of April 27, 1904, c. 1630, re-enacting and continuing certain statutes there referred to (33 Stat. 428 [Comp. St. § 4337]), authorize the issue of certificates such as the one executed by the viceroy and viséed by the consul general in favor of respondent as a merchant; such certificates are by statute made prima facie evidence of the facts they set forth and, as the learned justice said in that case, "certainly ought to be entitled to some weight in determining the rights of the one thus admitted." The significance of this cannot fail of appreciation in the presence of the statements, already shown, of the viceroy and the American consul general concerning the respondent's business and financial condition before leaving China; if those officials were deceived, the fact ought to be shown, and it would not seem difficult to solve the question in a way that would be fair to both sides. The rule is that where a Chinese person has been regularly admitted, for instance, as a merchant, the fact that he subsequently becomes a laborer does not of itself destroy his right to remain; such a fact is important only as it may tend to show that in reality he entered as a laborer, or for the purpose of immediately becoming a laborer, and so procured his admission through fraud and in violation of the Exclusion Acts.[1] Lew Loy v. United States, 242 Fed. 405, 417, and see page 410 on rehearing, 155 C. C. A. 181 (C. C. A. 6); Lui Hip Chin v. Plummer, 238 Fed. 763, 764, 151 C. C. A. 613 (C. C. A. 9); Moy Kong Chin v. United States, 246 Fed. 94, 97, 158 C. C. A. 320 (C. C. A. 7); United States v. Yong Yew, 83 Fed. 832, 838 (D. C., opinion by the late Circuit Judge Adams, then District Judge); Lo Pong v. Dunn, 235 Fed. 510, 512, 513, 149 C. C. A. 56 (C. C. A. 8). Indeed, in view of its facts the rule stated is in effect recognized in Liu Hop Fong v. United States, supra, 209 U. S. at page 463, 28 Sup. Ct.

---

[1] This is not affected by the provision of the certificate issued by the immigration officer at San Francisco in terms to identify and protect respondent only "so long as his status remains unchanged"; for that certificate, unlike the certificates issued by the viceroy and viséed by the American consul general, is, as we have seen, a departmental regulation and designed as a measure of convenience (Sibray v. United States, 227 Fed. 1, 4, 141 C. C. A. 555 [C. C. A. 3]), and of course can be effective only so far as it is within the law (United States v. Lou Chu, 214 Fed. at 463, 464 [D. C.]; In re Tam Chung, 223 Fed. 801, 803 [D. C.]).

576, 52 L. Ed. 888. The reason underlying all these decisions would seem to find expression in the language of Judge Lowell in Re Yew Bing Hi (D. C.) 128 Fed. 319:

"Speaking generally, the Chinese Exclusion Acts are directed to prevent the unlawful coming of Chinese into the United States, and to remove those who have come in unlawfully. * * * Thus far no indication appears that a Chinaman who has lawfully entered the United States may not change his occupation after entry without risk of deportation."

Now, it is to be remembered that in the instant case the respondent was not advised of any claim on the part of the government that he had effected his entry through fraud or misrepresentation; this is true of the affidavit under which he was arrested, and, so far as appears, of the proceedings had before the commissioner; moreover the government rested its case, as we have said, simply upon an admission of respondent that he was of Chinese descent and the consequent requirement on his part affirmatively to show his right to remain here; and, further, the decree contains no finding of fraud as to respondent's entry and so is not inconsistent with a change of status and intention after his admission. The case differs in this respect from Lew Loy v. United States, supra, 242 Fed. at page 408, 155 C. C. A. at page 184, since it had there been found in the court below that Lew Loy had "really entered the United States as a laborer, and that his coming was in violation of the statutes of this government," and yet this court was constrained to grant a rehearing because of complaint that the government's counsel at the trial had made a "disclaimer of charge of fraudulent entry." 242 Fed. 410, 155 C. C. A. 186.

It follows that as respects a Chinese person who has been admitted in apparent compliance with the treaty and acts of Congress as a member of a privileged class, in any proceeding instituted for his deportation on the basis of fraudulent entry seasonable notice of a charge to that effect must be given to him so that he may have fair opportunity to meet it; anything less than this would ignore the prescribed evidential effect of certificates issued and viséed pursuant to the treaty. We therefore agree with Judge Gilbert, who in Lui Hip Chin v. Plummer, supra, when speaking of the absence of a charge that appellant had entered with the intention of becoming a laborer or had procured his certificate as a merchant through fraud or misrepresentation, said (238 Fed. 765, 151 C. C. A. 615):

"If such fraud or misrepresentation was intended to be relied upon as the ground of his deportation, he was entitled to be advised of it." Lew Loy Case, supra, 242 Fed. 411, 155 C. C. A. 181.

The decree is reversed, and the record remanded for further proceedings consistent with this opinion.