## WONG CHOW GIN v. CAHILL. *
### No. 7865.

Circuit Court of Appeals, Ninth Circuit.
Nov. 12, 1935.

*Rehearing denied Jan. 13, 1936.

Stephen M. White, of San Francisco, Cal., for appellant.

H. H. McPike, U. S. Atty., and Robert L. McWilliams, Asst. U. S. Atty., both of San Francisco, Cal. (Arthur J. Phelan, of San Francisco, Cal., U. S. Immigration and Naturalization Service, on the brief), for appellee.

Before WILBUR, MATHEWS, and HANEY, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal from an order denying appellant's application for writ of habeas corpus. Appellant is in the custody of the immigration authorities, having been denied entry into the United States, and is held for deportation to China.

Appellant was born in China, but claims to be the son of Wong Jock Jim, alias Wong Ah King, who was a citizen of the United States until his death in 1925.

The statement of the Second Assistant Secretary of Labor upon the review of the action of the local authorities in the matter of the entry of the appellant contains a brief statement of facts and of the ground upon which the appellant was denied admission. We therefore quote the report as follows:

"This case comes before the Board of Review on appeal from denial of admission as a returning citizen.

"Attorney Charles E. Booth has filed a brief.

"The applicant was admitted in January, 1909, as a son of a native Wong Jock Jim, being one of five alleged brothers who were admitted within a few months in that year. In 1912 he was granted a citizen's return certificate and after a trip to China was readmitted in 1914. He again applied for a citizen's return certificate in 1916, which application was denied as was also an application filed in 1924. Applying again in 1926 he was denied and appealed to the Department. On July 12, 1926 (Bureau No. 55215/784), after a thorough review of the whole record and for reasons stated in the memorandum of that date this appeal was dismissed. He departed in 1928 on the trip from which he has now returned.

"From the evidence it appears that the applicant has had little or no contact or communication with either his alleged father or any of his alleged brothers as he might reasonably be expected to if related as claimed since about the time that he first came to the United States except that one of his alleged brothers Wong Duck Quong appeared to testify on his behalf in 1916. He is unable to give the whereabouts of any of his three living alleged brothers or to name the members or give the whereabouts of the families of the two alleged brothers who are said to be married. This lack of normal contact with the other members of his claimed family as well as the inconsistency of his statements regarding them given at various times must be regarded as evidence adverse to his claim of membership in this family.

"In 1926 the applicant testified to the effect that his father was living at some unknown address in the United States. He now testifies that his father died in 1925 and that he was informed of his father's death in that year.

"He testifies at the present time that his only sister died in 1914 and that he received a letter in that year telling of her death. However, the record shows that he testified in 1916 that his sister was then living in China.

"He now states that he lived in the same house with the wife of his brother Wong Dock Lee in his native village for a time in 1913. He testified in 1916 that he had never seen Wong Dock Lee's wife, his testimony being to the effect that he had not been in his native village at all on his 1912–1914 trip.

"He now testifies that his paternal grandmother died in his native village in 1909. In 1916 he testified that he did not know whether his paternal grandmother was living or not.

"At the opening of his examination the applicant stated that he wished to have his alleged brother Wong Dock Lee and the alleged acquaintance who appeared on his behalf as identifying witness in 1909 one Chin Fung Sue heard on his behalf. The attorney for the applicant reported that Wong Dock Lee could not be located. Chin Fung Sue, however, was found and interviewed. This witness was unable to identify any of the photographs of the applicant shown him or a photograph of the alleged father and was unable to state definitely whether he ever testified for a person of the

name alleged by the applicant. He stated, however, that he did testify for a Wong family man over twenty years ago and that the person for whom he testified had been a schoolmate of his in China. He states also that the Wong family man for whom he testified came from the Chung On Village but that he cannot remember whether he had ever been in the Chung On Village or not. The applicant states that he and Chin Fung Sue never went to school together and that Chin Fung Sue frequently came to his home in the Chung On Village.

"In view of these discrepancies, neither the testimony of Chin Fung Sue nor any other evidence presented at this time is believed by the Board of Review to overcome the affirmatively adverse evidence which warranted the finding that the applicant had obtained his admission by fraud and which caused the repeated denials of his applications for citizen's return certificates.

"It is, therefore, recommended this appeal be dismissed."

The principal question involved on this appeal is the effect of the order of the immigration authorities in admitting the appellant in 1909. The position of appellant in that matter is thus stated in his brief:

"In behalf of the appellant, it is claimed (1) that the action of the immigration authorities, in admitting him to the United States in 1909 as the son of a native born American citizen, and, thus, as an American citizen, was prima facie correct."

The appellee's position is thus stated:

"We freely concede that the action of the immigration authorities in admitting appellant into the United States in 1909 as the son of Wong Jock Jim was prima facie correct, and could not be disregarded without some affirmative evidence that appellant obtained admission fraudulently. There is no dispute whatever upon that point. The Secretary of Labor in affirming the excluding decision on appeal, specifically recognized that principle, and concluded that the evidence warranted the finding that appellant's original admission had been fraudulently obtained."

On this basis the appellant argues that there is no substantial evidence to overcome the presumption arising from the admission of the appellant in 1909 as a citizen of the United States. The appellee, on the other hand, claims that there is substantial evidence of fraud in the original application for entry in 1909, sufficient to overcome that presumption, and that the discrepancies developed not only overcome the presumption arising from the entry in 1909, but also justify the exclusion of the appellant. The appellant claims that there is no substantial evidence to justify the conclusion of fraud or to sustain the order of exclusion and deportation now under consideration. As pointed out by the Assistant Secretary of Labor in his opinion, it is clear that he concluded that the inability of the appellant to recollect facts which he had stated at the time of his entry was "affirmative evidence of fraud," and that the effect of the order of the immigration authorities made in 1909 admitting the applicant to the United States as a citizen was thus overcome, and that considering the application for entry made in 1934, the discrepancies in the testimony of the appellant justified the rejection of his evidence of citizenship and his detention and deportation. If it were true that upon the application for re-entry the immigration authorities were bound by a previous order made by them upon the application for admission in 1909, it is extremely doubtful whether or not it can be said that fraud has been affirmatively shown in obtaining the original entry, merely because it is found that the appellant has forgotten facts which he stated at the time of entry in 1909, or has made subsequent conflicting statements. The effect of discrepancies in testimony, as has been frequently pointed out, is merely to justify the rejection of the testimony, and where the burden of proof is upon the applicant for admission and the evidence he offers is rejected because of the discrepancies, he has failed to sustain the burden of proof, but if the burden is upon the government to negative the right to enter, the discrepancies alone are not evidence. We think that the appellee is in error in claiming that the ignorance of the applicant is substantial evidence. We quote from appellee's brief as follows:

"Even much less striking ignorance than this regarding neighbors in the home village has uniformly been held to constitute substantial evidence that the claimant is not a member of the family."

In support of this conclusion, appellee cites: Hom Lay Jing v. Nagle (C. C. A. 9) 57 F.(2d) 653; Lee How Ping v. Nagle (C. C. A. 9) 36 F.(2d) 582; Toy Wing Yow v. Nagle (C. C. A. 9) 24 F.(2d) 203; Louie Hing Fong v. Nagle (C. C. A. 9) 53 F.(2d) 739; Lim Wun v. Nagle (C. C. A.

9) 52 F.(2d) 396; Wong Wing Sin v. Nagle (C. C. A. 9) 54 F.(2d) 321; Louie Lung Gooey v. Nagle (C. C. A. 9) 49 F.(2d) 1016. An examination of these cases shows that they are all cases in which the person involved was applying for admission and the question under consideration is whether or not such discrepancies justify the rejection of the testimony offered by the applicant. These cases do not hold that ignorance is affirmative evidence. But we think the parties are both in error in the claim that the action of the immigration authorities in allowing the applicant to enter the United States as a citizen in 1909 is prima facie evidence of his right to re-enter in the sense that the courts will hold that the immigration authorities are bound by the previous determination unless they have such affirmative evidence as the courts would recognize as justifying a court in vacating or ignoring the effect of previous order. It is true that in deportation proceedings brought under the Chinese Exclusion Act of May 6, 1882, as amended, 8 USCA § 263 et seq., or under the law authorizing deportation by the immigration authorities, the presumption of rightful entry arising from the order made at the time would have to be overcome by affirmative proof in one case before the Commissioner in trying the case and in the other before the immigration authorities holding the deportation hearing. But the question here is as to the power of the immigration authorities to act upon all the evidence submitted to it and in their files at the time the applicant has, by leaving the country and returning thereto, assumed the burden of proving his right to re-enter.

No case has been cited which supports the conclusion that upon an application for re-entry the order of 1909 admitting the appellant was binding upon the immigration authorities in the absence of affirmative evidence showing fraud. It is clear that the original admission should be considered by the immigration authorities. To completely ignore such a holding would no doubt justify a conclusion that the action was arbitrary and violative of due process, but when they have in fact considered the effect of their prior order and given it all the weight that they think it is entitled to, the court is confronted, not with the question of whether or not the original order is prima facie evidence to be overcome by other evidence for that purpose, but whether or not on the whole case there had been such arbitrary exercise of authority as to deny the applicant due process of law.

At the time the appellant filed application for a citizen's return certificate in 1916, 1924, and 1926, it was decided by the immigration authorities that his original entry had been procured by fraud. In 1926 the chairman of the Board of Review, in denying appellant's appeal from the order refusing a citizen's return certificate, said:

"It is not believed that it can be seriously contended that an alleged citizen who within 90 days has completely forgotten his testimony in regard to his tiny village in China can be said to have landed on other than fraudulent representations."

These decisions tended to destroy whatever effect the original entry might have as prima facie evidence of the American citizenship of the appellant. There are some decisions which make the distinction between the effect of an order permitting entry upon a new application to re-enter, and upon a deportation proceeding.

In Bun Chew v. Connell (C. C. A.) 233 F. 220, 221, a Chinese laborer had in his possession a certificate of residence. It was held, where he had left the United States and gone to Mexico, the burden was upon him to show that upon his re-entry he had complied with the law and did not make his fraudulent entry. The court said:

"In such a case it does not devolve upon the prosecution to prove that the re-entry was fraudulent, but the burden rests upon the alien to show that his entry was legal, since the burden is always upon him to show his right to be and remain in the United States."

While this opinion was written in a deportation case and is therefore not directly in point, it does hold that the certificate, although otherwise prima facie evidence of a right to be in the United States, was in legal effect canceled by leaving the United States and returning without proper entry. The reasoning of the decision points to the fact that if he had been met at the Mexican border by the immigration authorities as was contemplated by law, that his right to enter could be questioned regardless of the fact that he had a certificate of residence. In that decision written by Judge Gilbert, the situation was distinguished from that presented in Liu Hop Fong v. U. S., 209 U. S. 453, 28 S. Ct. 576, 52 L. Ed. 888, in which, upon a deportation proceeding, it was held that the effect of

the certificate of residence must be overcome by affirmative proof in such a proceeding. In the case of Chan Sing v. Nagle, 22 F.(2d) 673, 674, this court held that where the immigration authorities had granted a return certificate to a merchant, that its action in refusing admission to the applicant was arbitrary, Judge Gilbert, speaking for the court, said: "We think it clear that fraud cannot thus lightly be established, nor a return certificate thus casually annulled." An examination of the case, however, discloses that this statement was not based upon the failure of the authorities to overcome the presumption resulting from the return certificate, but upon the ground that the evidence relied upon by the immigration authorities to prove that the applicant was not one of the copartners in the partnership to which he claimed to belong was entirely insufficient to justify the rejection of his claim to admission.* See, also, Nagle v. Lim Foon (C. C. A.) 48 F.(2d) 51, and Hom Yuen v. U. S. (C. C. A.) 214 F. 57. In United States v. Chin Len, 187 F. 544, the Circuit Court of Appeals for the Second Circuit held that where there was an adjudication before the United States Commissioner, that the applicant was a citizen of the United States, born here, that when he subsequently went to China and returned, the immigration authorities had no right to ignore the effect of the Commissioner's judgment until its invalidity was established. In the case of White v. Chan Wy Sheung (C. C. A.) 270 F. 764, the immigration authorities, although they had previously held that the father of the applicant was an American citizen, denied the applicant entry into the United States, and it was held that they were not bound by the previous decision that the appellant's father was a citizen. In Chin Gim Sing v. Tillinghast (D. C.) 31 F.(2d) 763, District Judge Morton held that where a father had previously been adjudicated to be a citizen of the United States by the United States Commissioner, it was arbitrary and unreasonable to deny admission to one who is admitted to be his son. In that case the question involved was the effect of a commissioner's decision. The same is true in Leung Jun v. U. S. (C. C. A.) 171 F. 413.

Turning now to the decisions of the Supreme Court of the United States, we find that in Tang Tun v. Edsell, 223 U. S. 673, 32 S. Ct. 359, 363, 56 L. Ed. 606, the court had under consideration the right of a Chinese person to enter the United States where such entry had been denied by the immigration authorities. The applicant claimed to be a citizen of the United States. He claimed that he had returned to China in 1884 and remained until 1897, when, upon his return to the United States, he was admitted by the Collector of Customs after examination; that he returned to China in 1905 for the purpose of marrying; and that upon his return with his wife seeking admission, was refused. It was found by the immigration authorities that the records of the Inspector of Customs showed that he had been denied admission in 1897, whereas the applicant had a certificate signed by the proper officer showing that he was allowed to enter. It will be observed that the court held that the discrepancy between the records of the office of the Collector of Customs and the certificate indubitably issued by the Collector of Customs justified the immigration authorities in denying admission where, after considering whether or not there was sufficient other affirmative evidence to show that the applicant was born in Seattle, it was held by them that there was not. The Supreme Court said:

"There remained the testimony of Tang Tun himself, but this, with all the other evidence in the case, was for the consideration of the officers to whom Congress had confided the matter for final decision. The record fails to show that their authority was not fairly exercised, that is, consistently with the fundamental principles of justice embraced within the conception of due process of law. And this being so, the merits of the case were not open to judicial examination."

This decision seems to hold that the question for consideration in ruling upon an application for admission is whether or not the immigration authorities have arbitrarily refused to consider evidence, and when they have considered such evidence and rejected it for reasons which are satisfactory to them and which the court cannot say are unreasonable and arbitrary, the court must act in accordance with the finding of the immigration authorities. In that case there was no affirmative evidence of fraud in the previously executed certificate of entry. It is merely shown that there was a conflict between the record of the office and the certificate and some evidence in regard to the custom of the authorities which tended to controvert the effect of the certificate of admission and aroused a suspicion of fraud.

We turn now to a consideration of the question of whether or not the action of the immigration authorities was so unreasonable in the case at bar as to justify the release of the applicant from custody and deportation.

The discrepancies are set out in the above-quoted opinion of the Second Assistant Secretary of Labor. In addition thereto, it appears that on April 20, 1909, less than four months after the applicant was originally admitted into the United States, he was unable to give the name of any family living in the little village of only six houses in which he claimed to have been born and reared. He applied twice for a return certificate to the United States and on each occasion it was denied for the reason that on each occasion there developed discrepancies in his testimony which, in the opinion of the immigration authorities, indicated that he had originally obtained his admission by fraud. He was allowed, nevertheless, to remain in the United States, perhaps because of the fact that in a deportation proceeding the burden would be upon the government to overturn the probative effect of his admission to the country in 1909. By going to China without such a certificate and after its repeated denial, the appellant voluntarily shifted the burden of proof to himself upon his application for re-entry. It was the duty of the officers to consider the effect of their previous order of admission in passing upon his right to re-enter. They did so. It cannot be said that their action upon the whole matter was unreasonable.

Order affirmed.